(No. 45829.—

ARNOLD L. CRANE Appellant, v. THE INDUSTRIAL COMMISSION et al.—(Corbetta Construction Company, Appellee.)

*Opinion filed March 29, 1974.—Rehearing denied May 31, 1974.*

Arnold L. Crane, of Chicago, *pro se.*

Cohn, Cohn & Lambert, of Chicago (Samuel L. Bullas, of counsel), for appellee.

PER CURIAM: At the conclusion of a hearing before an arbitrator for the Industrial Commission, the claimant, Arnold L. Crane, was awarded compensation for back injuries arising out of and in the course of his employment with Corbetta Construction Company. The award was reduced by the Industrial Commission on review, and on *certiorari* the circuit court of Cook County affirmed the reduced award. Claimant appeals.

The claimant testified that on September 23, 1964, he suffered severe back pains while carrying plywood forms in the course of his employment as a carpenter for Corbetta Construction Company. He reported the injury to the construction foreman and was referred to Dr. Gerald Rabin, who, after examining claimant and taking X rays, prescribed muscle relaxants and advised claimant to go home and rest. The claimant subsequently went back to work but had difficulty performing his usual duties due to continuing pain.

Dr. Rabin continued to treat him for about a month, but according to claimant his condition did not improve. He complained to the employer's workmen's compensation carrier about the treatment he was getting from Dr.

Rabin and requested that he be sent to another doctor. He was then referred to Dr. Sid Shafer, who took more X rays and advised the claimant that the X rays did not show anything unusual and that he was suffering from a strained back. Dr. Shafer prescribed more muscle relaxants. Claimant testified that when he went back to the insurance carrier's office and again complained about the medical treatment he was receiving, he was told that the company would not pay for any more medical treatment.

Thereafter, claimant consulted numerous doctors, including the Mayo Clinic, wore prescribed back supports, and was treated at various hospitals. He returned to the Mayo Clinic where he underwent surgery for a spinal fusion in July of 1966. Claimant testified that he was still suffering pain in his back, legs and feet at the time of the hearing before the arbitrator in 1968.

Dr. William Tansey testified on behalf of the claimant that his examination of the claimant on October 7, 1969, and a study of the X rays taken that date revealed that the claimant was suffering from degenerative arthritis and degenerative disc disease which "could well be" due to previous trauma although it was also possible those conditions could have been in existence for a long time. Various tests performed by Dr. Tansey indicated loss of motion in the back and legs.

Dr. Carlos Scuderi, whom claimant had consulted for treatment, testified for the employer that he first saw the claimant on February 24, 1965, and conducted various tests. He was of the opinion that the myelogram films taken by Dr. Rabin on September 25, 1964, were negative insofar as a herniated disc was concerned, although the X rays did show a slight narrowing of lumbrosacral disc spaces. He prescribed a bedboard, hot tub baths and heat-lamp treatments. He next saw him on March 17, 1965, at which time there was some limitation of motion but low-back tests proved negative. Even though examinations of the claimant on various occasions during the next

several months indicated that the claimant's loss of motion was getting somewhat worse, surgery was not deemed necessary. Dr. Scuderi was of the opinion that the July 26, 1966, operative diagnosis of a degenerative disc could have resulted from trauma or other causes.

Dr. Robert Moore, another orthopedic surgeon, testified that his examination of claimant's back taken on December 28, 1964, revealed no pathology and that a myelographic study the same date also indicated no abnormality. His diagnosis of the claimant's condition as of that date was "low back pain of unknown etiology." Dr. Gerald Rabin, the orthopedic surgeon who had treated claimant for the month immediately following the injury, testified for the employer that he diagnosed the claimant's ailment on September 25, 1964, as acute sprain of the lower back. He stated that the X rays taken that day were normal and showed no pathology. On subsequent visits he noted some improvement in the claimant's condition, and he advised claimant that he could go back to work.

Howard Phillips, a workmen's compensation claims supervisor for the employer's workmen's compensation insurance carrier, testified that when the claimant complained to him of the treatment being given by Dr. Rabin, he referred him to Dr. Sid Shafer. Thereafter, the claimant complained to him that he was also dissatisfied with the treatment rendered by Dr. Shafer, who had released him to return to work. When the claimant requested another doctor, Phillips advised him that the company would not be responsible for treatment by any doctor other than the two previously provided. However, he testified that claimant was never refused medical treatment and that the services of Dr. Shafer were retendered.

The arbitrator awarded $52 per week for 64 weeks temporary total incapacity for work; $52 per week for a further period of 200 weeks for permanent and complete loss of the use of each leg to the extent of 50%; and the sum of $3,968.30 for necessary first aid, medical, surgical

and hospital services. No further evidence was heard upon review by the Industrial Commission. The Commission's decision on review eliminated the award for medical expenses and reduced the balance of the award to compensation at the rate of $52 per week for 37 5/7 weeks for temporary and total incapacity for work, and $52 per week for a further period of 60 weeks for permanent and complete loss of the use of the right leg to the extent of 20%, and permanent and complete loss of the use of the left leg to the extent of 10%. The probable cost of the record to be filed as a return to the writ of *certiorari* was fixed at $1,375. Claimant paid that sum under protest. His emergency petition for leave to use original documents and transcripts as a return to the writ of *certiorari* was denied, and the Industrial Commission proceeded to prepare and file a copy of the record for review. Claimant subsequently received a refund from the Commission in the amount of $562.85 from the $1,375 paid under protest.

Claimant appears *pro se* on this appeal as he did throughout substantially all of the proceedings before the arbitrator, the Commission and the circuit court. In his brief in this court he sets forth 22 assignments of error, some of which are not germane to this appeal and most of which have as their underlying theme that he was the victim of a conspiracy on the part of various persons to deprive him of the award to which he was entitled. Those contentions which we consider relevant can best be considered on review by grouping them into four categories: (1) errors as to the admissibility of evidence; (2) prejudicial and improper conduct on the part of the arbitrator during the course of the hearing; (3) the Commission's decision was not supported by the evidence; and (4) claimant was improperly required to pay for the Commission's preparation of a copy of the transcript as a return to the writ of *certiorari*.

With respect to the alleged errors of the arbitrator in

ruling on evidentiary matters, the claimant points to instances where he was not allowed to introduce medical reports of doctors who treated him, an instance where he was not permitted on cross-examination to have the witness interpret X rays already in evidence and certain rulings on hearsay evidence. It is unnecessary to analyze each of these contentions in detail. Suffice it to say that in each instance the arbitrator's ruling could be justified on some basis—for example, failure to lay a proper foundation for admission of the medical reports and an appropriate limitation of length of cross-examination of the witness who was asked to interpret X rays. In no instance did the arbitrator's rulings on the admissibility of evidence constitute reversible error.

Claimant further contends that he did not receive a fair hearing before the arbitrator in that, among other things, he was required to proceed *pro se,* the proceedings before the arbitrator were conducted in a piecemeal manner and a continuance was improperly granted to the employer. As to the matter of the claimant appearing *pro se,* it is apparent from the record that claimant had been represented by at least two attorneys, both of whom withdrew or were discharged prior to the commencement of hearings. A third represented him during a portion of the hearings. Numerous continuances were granted to afford claimant an opportunity to secure other counsel, and it is clear that he cannot legitimately contend that he was not provided ample opportunity to secure representation. Insofar as the piecemeal nature of the hearing was concerned, it is true that there were some 15 separate hearings between June 3, 1968, and January 20, 1970, when the matter was finally concluded. However, the length of the proceeding was due in large part to the claimant's presentation of multitudinous exhibits and his lengthy cross-examination of the employer's witnesses. Under the circumstances, the necessity for separate hearing dates was hardly attributable to either the employer or the

arbitrator. We also do not concur with the claimant's contention that the arbitrator abused his discretion in allowing the employer a continuance to bring in additional medical witnesses. After reviewing the transcript of the proceedings in its entirety, it is apparent that the arbitrator, recognizing the claimant's handicap in appearing *pro se,* did all he could to assist him in the presentation of his case, and the claimant's argument that the arbitrator engaged in prejudicial and improper conduct is clearly without merit.

Claimant's argument that the Industrial Commission's decision should be set aside is based in part upon his assertion that the Commission's determination was founded on fabricated evidence and perjured testimony. As we have stated on many occasions, it is primarily the function of the Industrial Commission to determine the extent of an injured employee's disability and in this regard to determine the weight to be afforded conflicting testimony, including conflicting views of medical witnesses, to draw reasonable inferences and conclusions from the evidence, and to determine disputed questions of fact. (*Keystone Steel & Wire Co. v. Industrial Com.* (1969), 42 Ill.2d 273.) The decision of the Commission on these matters will not be set aside unless contrary to the manifest weight of the evidence. This rule is also applicable in cases such as this where the Commission has reached a different conclusion from that reached by the arbitrator without having heard additional evidence. (*Esposito v. Industrial Com.* (1957), 12 Ill.2d 305.) Upon review of all the evidence, we are of the opinion that the decision of the Industrial Commission is not against the manifest weight of the evidence either as to the extent of disability caused by the September 24, 1964, accident or as to claimant's entitlement to reimbursement for medical services and hospitalization he incurred on his own over and above that provided by the employer.

In support of his contention that he was entitled to a refund of the full $1,375 deposited with the Industrial

Commission as the probable cost of preparation of the record as a return to the writ of *certiorari,* claimant relies on our decision in *Saldana v. Industrial Com.* (1972), 53 Ill.2d 222. In *Saldana* we held that the provision of the Workmen's Occupational Diseases Act allowing a charge for the preparation of the record for review (Ill. Rev. Stat. 1969, ch. 48, par. 172.54(f)(1)) authorizes a charge of 60 cents per page only for testimony taken before the Commission and does not authorize a charge for testimony or other matters which have already been incorporated in the record made at the hearing before the arbitrator filed with the Commission on review. The *Saldana* case was followed in *Moss Equipment v. Industrial Com.* (1973), 55 Ill.2d 261, which involved analagous facts under the Workmen's Compensation Act. In the case at bar, it appears that the sum of $720 withheld by the Commission may represent a charge of 60 cents per page for retyping and reproducing 1,200 pages of the original transcript of proceedings before the arbitrator already on file. If that is the case, then under the authority of the *Saldana* and *Moss Equipment* cases claimant would be entitled to a refund of that amount less any portion thereof attributable to additional portions of the transcript, if any, added by the Commission in compliance with its duty to prepare a true and correct copy of the testimony and all other matters in the record for review.

We have given consideration to the various other assignments of error raised by the claimant and find them to be without merit.

The judgment of the circuit court of Cook County affirming the Industrial Commission's award of compensation to the claimant is affirmed. However, the cause is remanded to the Industrial Commission for a determination of the refund due claimant in accordance with the views expressed in the *Saldana* and *Moss Equipment* cases.

*Affirmed and remanded,*
*with directions.*