(No. 47542.— )

BARBARA A. LONG, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Continental Can Company, Appellee.)

*Opinion filed January 26, 1976.*

Martin Fertel and Gordon, Brustin & Schaefer, Ltd. (Gilbert W. Gordon, of counsel), for appellant.

Kane, Doy & Harrington, of Chicago (Steven H. Shanok, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant Barbara A. Long, an employee of respondent Continental Can Company, filed applications for adjustment of her claims for compensation under the Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.1 *et seq.*) for injuries arising from work-connected incidents on September 2 and December 1, 1971. The cases were consolidated for hearing, and an Industrial Commission arbitrator awarded compensation of $79 per week for 3 2/7 weeks of temporary total incapacity but found no

permanent disability resulting from the September accident; as to the December incident, however, he awarded compensation of $95 per week for 5 2/7 weeks of temporary total incapacity and additional compensation for a 25% permanent loss of use of the right leg. Claimant sought review of both awards and respondent of the award for the December injury. The Commission affirmed the September award, but eliminated from the December award all compensation for permanent disability, finding that none had been sustained. Claimant sought *certiorari* from the circuit court of Cook County, which confirmed the Commission's decisions.

The only question before us is whether the finding of the Commission that claimant had sustained no permanent disability is contrary to the manifest weight of the evidence. In our judgment it is not.

On September 2, 1971, claimant had been employed by respondent for some nine years. She was working as a packer, removing cartons of one-gallon plastic bottles from a conveyor belt and stacking them on "skids" for removal to another area. For some reason, which is not entirely clear, a stack of cartons jack-knifed and she fell to the concrete floor. She complained of pain in the small portion of her back, was sent to the company doctor, given pain medication and a rubber bandage around her waist, and sent home. She returned to work the next day, but was still having pain, saw the doctor again on September 4 and did not return to work until September 27. During that interim she was sent to the Bazell Medical Center by respondent's personnel manager and received treatment every other day. Upon returning to work she was given light duty for a two-week period before returning to her regular job. She continued to experience some back, hip and leg pain.

On December 1 claimant testified she was working at a different job involving the lifting and stacking of heavier cartons. While lifting one of these from the floor she felt a

"severe" pain in her back. She was taken to the first-aid room, waited there about an hour, then went back to her work area and that night went to Billings Hospital where she was told to wear a belt and given a prescription. She testified she then went home where she spent the next three weeks in bed, returning to Billings on December 21. She was given the prescribed back brace early in January, which she testified she was still wearing, and she returned to work at a lighter job on, she insisted, February 27, although the company records indicated her return on January 27. She continued to see Dr. Baker at the Allport Clinic at biweekly intervals, apparently seeing him last on June 26. She entered Mercy Hospital on July 15 because, she stated, of the pains in her back and legs. While there a hysterectomy was performed on her by Dr. Williams for which group insurance benefits were paid. She returned to work on November 6, two weeks prior to the hearing before the arbitrator. Claimant acknowledged a prior injury to her side when she fell at work in 1965.

Claimant argues here that there is no difference of substance in the medical evidence and that, therefore, the Commission's finding that no permanent disability ensued from the injuries is contrary to the manifest weight of the evidence. No doctor testified, but each party introduced in evidence a written report from an examining doctor. Claimant relied on the report of Dr. Robert C. Busch, who examined claimant on September 19, 1972. His report states that X-ray examination of the lumbosacral spine indicated a "Flattening of the lordotic curve with lumbar tilt to the right." His diagnosis was "Bilateraly lumbosacral sprain with radiculation of spasm both sides, bilateral radiculitis." His "Remarks" were: "Findings resulting from the injury. Residual complaints and disability a source of discomfort for this patient who is still in need of treatment." The report in its statement of claimant's history makes no mention of the earlier surgery.

Respondent introduced a June 26, 1972, report of Dr.

C. J. Zurfli made to respondent's insurer and based upon his examination of claimant. That report states in part: "This is an individual with a congenital configuration of the spine and it must be considered within the 'unstable back' category. This has been present since birth, in my opinion, and associated with the restriction described above in movements of the lumbar level. Conceivably there was a superimposed muscular and ligamentous lumbosacral strain from which, in my opinion, she has recovered. With reference to her working capabilities, she at this time is doing the type of work suited for an individual of this type and, if there would be a resumption of lifting, further recurrence and difficulty can be anticipated."

We cannot say that this medical evidence is in substantial harmony as urged by claimant; rather it seems to us to differ markedly. Dr. Busch's findings of sprain and bilateral radiculitis are not indicated to be permanent nor even specifically related to the September and December episodes at work. In Dr. Zurfli's opinion, however, claimant's problems result from a congenital spinal configuration, and she has recovered from the effects of any lumbosacral sprain.

Faced with these incompatible medical reports, the Commission must, as we said in *Beck v. Industrial Com.* (1965), 32 Ill.2d 148, 152, choose between them, a function preeminently of the Commission. We cannot say that a Commission finding of no compensable permanent disability was not a permissible inference and therefore contrary to the manifest weight of the evidence. *Martinez v. Industrial Com.* (1974), 59 Ill.2d 258; *McIntire v. Industrial Com.* (1971), 49 Ill.2d 239.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*