(No. 49835.)

PHILLIP J. SCUDERI, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Boros Reliable Erectors, Inc., Appellee.)

*Opinion filed November 22, 1978.*

278

Richard J. Troy, of Sneider & Troy, of Chicago, for appellant.

John P. McAuliffe, of Weidner & McAuliffe, of Chicago, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The claimant, Phillip Scuderi, sustained accidental injuries on March 4, 1974, while employed as a millwright by the respondent, Boros Reliable Erectors, Inc. An arbitrator for the Industrial Commission found he was entitled to compensation for 10 weeks of temporary total incapacity, 25% permanent loss of use of both legs, and

15% permanent loss of use of his right arm. The Commission increased the award for temporary total incapacity to 16 weeks, but set aside that portion of the award for partial permanent loss of use of the claimant's legs and right arm. The circuit court of Cook County confirmed the award as amended, and the claimant appealed directly to this court under our Rule 302(a) (58 Ill. 2d R. 302(a)).

The claimant was injured when a steel conveyor weighing approximately one ton slid across his back as he was working on a mail chute installation. One of the conveyor's angle irons deeply lacerated the flesh and muscle of the lower left portion of his back, causing the claimant to fall to the cement floor and strike his right arm and elbow on the ground. After a company nurse had bandaged the claimant's back wound, he was rushed to the hospital where he underwent immediate surgery. He had two subsequent surgical procedures to aid the healing of the wound, the final one as an outpatient.

The only question presented is whether the Commission's finding, which reversed the arbitrator's award for partial permanent loss of use of the claimant's legs and right arm, is contrary to the manifest weight of the evidence. (There is no dispute over the claimant's increased award for temporary total incapacity.) The claimant argues that his own testimony before the arbitrator, coupled with that of his medical expert, compels the conclusion that he suffered residual disability of his legs and right arm, and that the medical testimony of the respondent's three witnesses was insufficient to overcome that conclusion.

The claimant testified before the arbitrator that he is troubled by cramps after driving for more than 15 minutes, and that it is difficult for him to step out of an automobile. He tires after work and when walking up the stairs of his home. His back frequently cramps up and he suffers from numbness in the back of his legs and knees.

He said he has constant pain in his right elbow and arm. On cross-examination, he testified that his right arm was not put in a cast or sling, and that he had not been given a back brace, traction, whirlpool treatments, shoelifts, tests or other physiotherapy for his arm or legs during his 20-day hospitalization or following his release. With the exception of several periods when he did not work, for which he received the award for temporary total incapacity, the claimant continued working full-time as a supervisor, millwright, or welder for the respondent and other employers on various jobs obtained through his union. At the time of the arbitrator's hearing, the claimant was working eight hours a day, five days a week, at a construction site as a welder. He was able to drive his own automobile between his home and the job site, a 35-minute trip each way.

Dr. Robert Busch, a specialist in industrial medicine and surgery, testified on behalf of the claimant, whom he had examined twice. His conclusion was that there was "impaired motility of both arms" and "weakness and stiffness of the right leg," conditions which he judged to be permanent and causally related to the accident. The witness did not note any impairment of the claimant's left leg. On cross-examination, however, he testified that the claimant's pain was a subjective response, that his sensations and reflexes had tested normally in both arms and legs, and that there was no evidence of atrophy, or wasting of the extremities. He said he had not reviewed the claimant's hospital records or consulted with the claimant's treating physician or other doctors who had also examined the claimant.

The respondent offered evidence from three physicians, two of whom had initially been the claimant's physicians. Dr. Robert Emanuele, who alone had treated the claimant, testified for the respondent that all treatment given the claimant was directed to the area of his

laceration, with the exception of unspecified treatment to the right leg because he had complained of pain as the result of the injury. He testified that there was no evidence of neurological involvement in either leg or arm, no evidence of injury to the spinal column, and that the claimant had not complained of pain in his arms. His testimony incorporated the findings of Dr. George Hallenbeck, the roentgenologist who had interpreted the claimant's hospital X rays.

Dr. Daniel Grizadas, an orthopedic surgeon, had conducted an examination at the request of the claimant's attorney. He testified for the respondent that the usual tests produced negative findings, and that there was no evidence of neurological involvement of the lower extremities. There were no symptoms of loss of ·use of the claimant's arms, the witness testified. He stated that certain degenerative changes of the spine were, in his opinion, compatible with the claimant's age and body structure, although they could have been aggravated by trauma. The respondent also introduced the report of its physician, Dr. Clarence Zurfli, which tended to substantiate the testimony offered by Drs. Emanuele and Grizadas.

The testimony of the claimant and the expert witnesses relating to the existence, extent and permanency of any injuries to the claimant's legs and right arm was in part conflicting. Questions of fact, including the resolution of conflicts in medical testimony, are within the province of the Industrial Commission (*Long v. Industrial Com.* (1976), 62 Ill. 2d 289, 292; *Seay v. Industrial Com.* (1976), 62 Ill. 2d 241, 244), even where the Commission's findings differ from those of the arbitrator and no further evidence has been taken by the Commission (*Crane v. Industrial Com.* (1974), 57 Ill. 2d 158, 164). The Commission's decision will not be disturbed by a court unless it can be said to be contrary to the manifest weight of the evidence, although the court might have drawn

282

other inferences from it. (*C.S.T. Erection Co. v. Industrial Com.* (1975), 61 Ill. 2d 251, 257; *Chicago Transit Authority v. Industrial Com.* (1975), 61 Ill. 2d 78, 85; *Martinez v. Industrial Com.* (1974), 59 Ill. 2d 258, 260.) We cannot say the Commission's finding here was contrary to the manifest weight of the evidence, and accordingly we affirm the judgment of the circuit court of Cook County confirming that finding.

*Judgment affirmed.*