(No. 51668.—

THOMAS B. FORREST, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.* (Caterpillar Tractor Company,
Appellee).

*Opinion filed October 2, 1979.*

K. Michael Latshaw, of Bennett, Willoughby & Latshaw, P.C., of Decatur, for appellant.

Robert F. Fahey, of Peoria, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, Thomas B. Forrest, filed a claim for compensation with the Industrial Commission, alleging that he was injured while working at the Caterpillar Tractor Company on November 18, 1975. The arbitrator awarded claimant temporary disability payments and compensation for 25% loss of use of both legs. On review sought by respondent, Caterpillar, the case was submitted to the Industrial Commission on the record, and the Commission vacated the award, ruling that claimant had failed to prove that his injury arose out of and in the course of his employment. Claimant appealed to the circuit court of Macon County, and that court confirmed the Commission's decision. The cause is brought to this court by claimant under Rule 302(a) (58 Ill. 2d R. 302(a)).

Claimant was the first witness to testify. On direct examination, claimant's attorney directed claimant's attention to November 17, 1975, rather than November 18, the date indicated in his claim form as the date of injury. Claimant first related the details of the alleged accident. He was working with a heavy metal drill, and he had attached it to a hoist to facilitate its movement over a drill fixture. In attempting to position the drill, he pulled the drill toward him, but it moved more quickly than he expected, and it hit him in the stomach. He said that the hoist was too far from the drill fixture. He was pushed against the fixture and experienced a burning sensation in his back. Claimant left work that day without reporting the accident, but developed difficulty in moving as he completed a bus ride home.

Claimant returned to work the following day and told his foreman, Larry Safford, about his accident and the danger of the hoist position. According to claimant, Safford said that similar accidents had occurred before. Claimant was assigned to work with a lighter drill.

Claimant did not work on the second day following the alleged accident, but went deer hunting. He explained that the trip was prearranged. He experienced much pain and difficulty in traveling and in hunting, and the hunting party returned prematurely.

On the day following his return, claimant visited Dr. Harold F. Haines, a chiropractor. He obtained temporary relief and returned to work the next day. He continued to work and over the first few weeks had occasional checkups with the company nurse.

According to claimant, he experienced greater pain as time progressed, and he grew tired more easily. His legs especially weakened. Beginning on April 12, 1976, and continuing through June 4, 1976, claimant periodically visited Dr. Haines for treatment. He told Dr. Haines that the injury was sustained on November 18, 1975. Due to

pain and weakness, he stopped working on June 3. Beginning on or about June 6, 1976, claimant began consulting Dr. J. Peter Frechette. The doctor's records indicated that claimant said that the accident was on November 19, 1975, rather than November 18, as indicated in his claim for compensation. Following preliminary examinations, Dr. Frechette recommended hospitalization and X rays of the spine. A problem was detected in the lower spine, and, in early July of 1976, Dr. Frechette performed a laminectomy on claimant. In addition to removing parts of vertebrae, Dr. Frechette also removed some ligaments and two defective discs from claimant's lower spine. His condition improved to the point where he could walk, move around and "do some things" with less discomfort. He remained under Dr. Frechette's supervision.

Pursuant to respondent's request, claimant visited Dr. H. O. Hoffman three times to check claimant's progress. Also pursuant to respondent's request, claimant visited two company doctors, one of whom, on March 30, 1977, recommended that claimant return to work after claimant had expressed a desire to do so.

Claimant returned to work the next day, but his legs tired quickly, and on the following day, he experienced severe pain. His legs cramped, he experienced difficulty walking, and he almost fell from his porch as he returned home that night.

The following day, April 2, 1977, claimant contacted Dr. Frechette, who directed claimant not to work. About three weeks later, Dr. Frechette again X-rayed claimant's spine and prescribed a back brace which was worn for two weeks. With Dr. Frechette's approval, claimant returned to work on July 11, 1977, again working with a lighter drill.

At the close of direct examination, claimant testified that he had some back trouble in 1973, for which he consulted Dr. Haines. As a letter from Dr. Haines to

claimant's attorney showed, the visit was actually in October of 1972. Claimant was not then employed by respondent.

On cross-examination, claimant was questioned about previous consultations with Dr. Haines. One of respondent's exhibits, the letter from Dr. Haines to claimant's attorney, stated that X rays were taken during claimant's October 1972 visit which indicated a mild degenerative hypertrophic osteoarthritis of the lower spine, with possible disc problems. During this visit, claimant spoke of back difficulties in April of 1971. Also, according to the letter, claimant visited Dr. Haines a second time in September of 1975. X rays then taken showed no appreciable change in condition.

Respondent's attorney, apparently misinterpreting the letter, asked claimant if he had visited Dr. Haines in 1971. Consistent with the letter, claimant answered that he did not see or even know Dr. Haines in 1971. He also stated that he did not recall having visited Dr. Haines in September of 1975 nor missing two or three days of work that month.

Respondent's attorney then questioned claimant concerning the contents of a medical report prepared by a company nurse during claimant's visit to the company first-aid office. The report states that claimant said that he was injured in September of 1975 when a hoist swung and hit him and that he missed two or three days of work. In response to the attorney's questions, claimant said that he did not tell the nurse that he had been injured in September or that he had missed work. The exact questions and answers were as follows:

"Q. Did you tell her that you didn't work for two or three days after this incident in September?
A. Yes. In December?
Q. No, sir, I asked about September.
A. I didn't tell her anything in September."

Claimant's wife, Thelma, was next called to testify on her husband's behalf. She said that when claimant came home on the day of his injury, he was stooped over and holding his back. He told her that he had hurt his lower back at work, and he explained how he had done so. He also complained of a weakness in his legs. The discomfort prevented him from sitting in one position for too long, and he began pacing back and forth. The injury was not discussed for a few days thereafter.

She further said that claimant never before had lower back pain, although he did once experience upper back pain "towards his shoulder blades." He visited a chiropractor to obtain relief from the upper back pain "about a couple of months before" the November 1975 accident.

Mrs. Forrest testified that she had never before seen her husband in such a condition as he was following the accident. His movements were curtailed, and he tired more quickly than before the accident. Since the accident, his legs bothered him more also. She further testified her husband was never before injured at Caterpillar.

On cross-examination, Mrs. Forrest was asked about prior injuries, specifically claimant's upper back problem, and she responded that there was no actual accident or injury, but that he had developed pain between the shoulder blades. This problem arose, she said, at a time when claimant was self-employed. She also said claimant did not see a chiropractor for a lower back problem before 1975. She was not aware of any complaints about lower back pain prior to the present injury.

Following the testimony of claimant and his wife, the arbitrator admitted various records and correspondence into evidence. All were received without objection except for two of respondent's exhibits. The first exhibit to which objection was made is the medical report prepared by a company nurse in which she indicated that claimant told her that his injury resulted from an accident in September,

rather than November of 1975. The objection made by claimant's attorney was that the exhibit is incompetent. The second exhibit in question is Dr. Haines' letter to claimant's attorney. The objection raised was that the letter is of no particular bearing in this case. In this court, claimant contends that the exhibits are inadmissible due to respondent's failure to establish authenticity or foundation. Because of the potential significance of these two exhibits, we first address the issue of their admissibility, and we agree with respondent that the arguments now made for the first time on appeal were waived by claimant's failure to raise them before the arbitrator (*Hays v. Illinois Industrial Home for the Blind* (1958), 12 Ill. 2d 625, 631; *Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487, 495). The arbitrator's decision to admit the exhibits must therefore be tested against the objections made by claimant at that time, and we again agree with respondent that the objections then made were insufficient to require exclusion of the evidence. As to the medical report, the objection was to its competency, but "[t]he word 'incompetent' as applied to evidence means no more than inadmissible, and thus cannot be said to state a ground of objection." (McCormick, Evidence sec. 52, at 116 (2d ed. 1972).) As to Dr. Haines' letter, the objection to relevancy is without merit. Both exhibits were properly admitted.

These exhibits, when compared to the testimony of claimant and his wife, create substantial conflicts in the evidence, and we find no cause to set aside the Commission's determination that claimant has failed to prove that his injury arose out of and in the course of his employment (*Oliver v. Industrial Com.* (1976), 65 Ill. 2d 228, 230-31). "Questions of fact, including the resolution of conflicts in medical testimony, are within the province of the Industrial Commission (*Long v. Industrial Com.* (1976), 62 Ill. 2d 289, 292; *Seay v. Industrial Com.*

(1976), 62 Ill. 2d 241, 244), even where the Commission's findings differ from those of the arbitrator and no further evidence has been taken by the Commission. (*Crane v. Industrial Com.* (1974), 57 Ill. 2d 158, 164)." *Scuderi v. Industrial Com.* (1978), 73 Ill. 2d 277, 281.

In summary, the Commission's decision is not against the manifest weight of the evidence. The circuit court's judgment confirming the Commission's decision is therefore affirmed.

*Judgment affirmed.*