(No. 52050.-

JOSEPH A. LUBY, Appellee and Cross-Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Frank C. Abt, Appellant and Cross-Appellee).

*Opinion filed September 15, 1980.—Rehearing denied November 26, 1980.*

Lee C. Korbakes, of Chicago, for appellant.

James Lewis Kaplan, of Kaplan, Sorosky, Hoffman & Buffen, Ltd., of Chicago, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The claimant, Joseph A. Luby, filed an application for adjustment of claim with the Industrial Commission seeking compensation from the respondent, Frank C. Abt, doing business as Lake View Ice Cream Company, for the fracture of a hip in an accident on June 18, 1975. The arbitrator made an award in favor of the claimant. On review the Commission, without hearing additional testimony, set aside the award. It expressly found that the relationship of employee and employer existed between the claimant and the respondent at the time of the accident, but that the claimant had failed to prove that his injury had been sustained in the course of employment. The circuit court of Cook County reversed the Commission's decision and reinstated the award. The

respondent has appealed pursuant to Rule 302(a) (73 Ill. 2d R. 302(a)), and the claimant has cross-appealed.

The respondent contends that the Commission's finding that the claimant was an employee of the respondent was contrary to the manifest weight of the evidence. The claimant challenges, on the same ground, the Commission's finding that no compensable accident occurred. We turn first to the question of the claimant's status.

The respondent is a Chicago distributor of ice cream products. He testified to his manner of operation as follows: The products sold by the respondent consist of ice cream bars of various kinds, referred to collectively as "ice cream novelties," which are sold to the public through individual vendors operating pedal-driven carts along city streets. All of the respondent's products are marketed in this manner. The carts are owned by the respondent. The respondent testified that they do not bear the name of Lake View Ice Cream Company, but this was disputed by the claimant.

In 1975 the respondent's vendors numbered about 180. The respondent did not engage a person as a vendor in advance, nor for any fixed period of time. The vendor was engaged on a daily basis to sell ice cream during that day, and there was no commitment by either the respondent or the vendors that the latter would work any given number of days a week. The respondent testified that many vendors worked only one day a week, and the claimant testified that he himself operated a cart only one or two days a week.

The working hours during the day were likewise not rigidly prescribed by the respondent. The respondent requested vendors to arrive at his place of business between 10 a.m. and 2 p.m. to pick up their carts, and they were also asked to return before nightfall, but conformity to these hours was not insisted upon. The respondent had only some 40 carts, however, so that a

vendor who reported for work late in the day would run the risk of being unable to work that day.

When a person applied to the respondent to be taken on as a vendor for the first time he was handed a document captioned "Consignment Agreement," which he was required to sign before being given a cart. The respondent offered into evidence 152 copies of such agreements which had been signed in 1975 by vendors who first worked for the respondent during that year. The respondent was unable to locate in his files any such agreement signed by the claimant. The latter testified, however, that he had seen this document or one similar to it when he first came to work for the respondent in 1973, and that he had signed it.

The agreement purports to grant the vendor the privilege of obtaining the respondent's products "on consignment." It provides that all merchandise shall be paid for on the day received, but that unsold merchandise may be returned with the vendor being credited for the purchase price; that the purchase price will be "our current wholesale price"; that the respondent will rent the vendor a cart at a charge of 10 cents a day. The agreement closes with the following statement:

> "You are to vend or dispose of the merchandise consigned to you.
>
> We are not to be liable for damages or injuries to you or to third persons; you shall not hold yourself out to the public as an employee of this Company, and no employment of you by us has ever been made or contemplated."

When a vendor arrived at the respondent's place of business for work he would stock his cart with an assortment of various ice cream novelties, the selection being left to him. A record was made of the number of each item taken, and the vendor was debited for each item taken at a price set by the respondent. The vendor was also informed of the price at which the respondent sug-

gested each item be sold to the public. These prices also appeared on the cart. Vendors were not instructed to follow any particular route or to confine their operations to any specific part of the city.

Upon returning at the close of the day to the respondent's office each vendor would turn in his unsold merchandise to the respondent, and would be credited for each item at its wholesale price. He was required to turn over to the respondent 70% of the proceeds received from sales, retaining 30% for himself. These figures were arrived at by the respondent on the assumption that the vendor had made all his sales at the suggested resale price. The claimant testified that in 1975 the daily amount which he received ran from $10 to $15. Vendors received no further compensation from the respondent, and no income tax or social security payment was withheld from their share of the proceeds.

This court has not hitherto had occasion to consider whether a street vendor or peddler is to be treated as an independent contractor or as an employee for purposes of the Workmen's Compensation Act. That question also does not seem to have been frequently considered elsewhere, but the claimant does call our attention to a few cases from other jurisdictions, and in each of them an injury to the claimant has been held compensable under comparable statutes. *Florio v. Assael* (1949), 274 App. Div. 1082, 85 N.Y.S.2d 624; *Saitta v. Namar, Inc.* (1961), 14 App. Div. 2d 954, 221 N.Y.S.2d 147; *Seals v. Zollo* (1959), 205 Tenn. 463, 327 S.W.2d 41.

In general, employment status is determined upon consideration of a number of factors, such as "the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and who provides tools, materials, or equipment." (*Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 97.) The significance of these and

other criteria will of course vary according to the kind of work concerned. With one or two minor exceptions there is no conflict in testimony here, and the decision turns on the inference to be drawn from the undisputed facts. The inference drawn by the Commission was that the claimant was an employee, and unless a contrary inference is the only one which could be reasonably drawn, the Commission's decision must be upheld. *Kirkwood Brothers Construction v. Industrial Com.* (1978), 72 Ill. 2d 454, 459.

As was said of the evidence in the *Kirkwood Brothers* case (72 Ill. 2d 454, 460-61), none of those aspects of the relationship between the claimant and the respondent which were touched upon in the testimony is incompatible with the status of an employee. Several, on the contrary, would be inconsistent with that of an independent contractor. The respondent owns and supplies the cart used by the vendor, a point which serves to distinguish this case from *Bauer v. Industrial Com.* (1972), 51 Ill. 2d 169, relied on by the respondent; the vendor receives no compensation beyond his share of the proceeds of his sales; and he has the right to return unsold merchandise. Although the respondent withholds no income tax or social security, that factor has not been found significant. See *Kirkwood Brothers Construction v. Industrial Com.* (1978), 72 Ill. 2d 454, 460; *Mastercraft Co. v. Industrial Com.* (1974), 58 Ill. 2d 155, 158; *Greenberg v. Industrial Com.* (1961), 23 Ill. 2d 106, 107.

The respondent leans heavily on the "Consignment Agreement" prepared by him, particularly on its last paragraph. Leaving aside the question whether the claimant signed an agreement containing that language, a statement by the respondent that he did not employ the claimant cannot, of course, foreclose inquiry into whether the engagement of the claimant did constitute the latter an employee within the meaning of the Act.

The respondent asserts that the claimant's freedom with respect to his hours of work, the area in which he was to operate, and the particular varieties of ice cream products to stock in his cart shows an absence of control by the respondent which is inconsistent with the status of employee. In each of these respects the claimant was subject to control in a practical sense, however, since his remuneration depended on the amount of his sales, and since a major deficiency in a vendor's sales could lead to his discharge, as the respondent admitted in his testimony.

Moreover, given the nature of the work performed by the claimant the Commission was not required to treat the enumerated factors as controlling. The claimant's task was not to deliver merchandise to specific persons who had ordered it, but to make it available to any person he encountered who expressed a desire to buy. The job did not call for mastery of sales techniques or other skills. The claimant did not act as a vendor for other concerns, nor did he hold himself out as having any special qualifications to do so. The respondent, on the other hand, was not a manufacturer of ice cream bars. He was solely a distributor, and his sole method of distribution was through street vendors. His vendors, including the claimant, thus performed work which was an integral part of the respondent's regular business. (See *Kirkwood Brothers Construction Co. v. Industrial Com.* (1978), 72 Ill. 2d 454, 460.) The respondent's contention that the claimant was not an employee must therefore be rejected, and we proceed to consider whether the claimant's injury was incurred in the course of his employment.

The claimant, who was 71 at the time of the accident in which he was allegedly injured, gave the following account of it. While engaged in selling ice cream bars, he was approached by a group of men who asked for and were given several bars, but refused to pay for them. One of the men also attempted to take additional bars out of

the cart. When the claimant tried to stop him, the man grabbed him and threw him down on the pavement. The claimant immediately felt pain in his right hip. He got on his bicycle, and rode back to the respondent's office, which was about a mile and a half away, arriving there about an hour later. He reported the accident to the respondent, and said that he had hurt his hip and couldn't pedal anymore, and was therefore going to quit work for the day. He then rode home on his own bicycle, a distance of about 30 blocks. He testified that because of his pain he had difficulty in pedaling and had to proceed very slowly.

On June 19 the claimant worked a full day at another establishment, where he was employed on a part-time basis as a washroom attendant. He was still feeling pain in his hip. He was admitted to the hospital on June 21. The claimant also testified that he had never suffered any injury to his hip subsequent to the incident of June 18.

At the close of the claimant's testimony he introduced in evidence hospital records relating to his treatment pursuant to section 16 of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.16). These records were admitted without objection by the respondent. Included among them was a handwritten report, apparently prepared by a physician shortly after the claimant's admission. The report stated that the claimant was brought to the hospital by ambulance, and it also contained the following:

"HISTORY:

 As above claims 2 days ago, robbed while selling ice cream and same knocked him down in pavement and injured his lower back and right hip since was able to walk but limping. Yesterday was riding a bicycle and a car cut him off and he fell from his bike and fell in ground and re-injured his right hip. Since c/o [complains of] severe pain and can't move his right lower extremity."

In the proceedings before the arbitrator counsel for the respondent did not interrogate the claimant with

regard to this statement or call it to the attention of the arbitrator. During the proceedings in circuit court counsel for the respondent told the judge that he had not been aware of the report when the case was before the arbitrator, stating, "It was only when I read that hospital record months later that these circumstances surrounding the second injury were brought to light. I'm sure that the arbitrator wasn't aware of a second injury." Although they disagree over whether the report could properly be considered, both parties agree that it was brought to the Commission's attention during the proceedings on review.

The report and the parties' contentions regarding it were also considered by the circuit court. The court concluded that the medical history contained in the report could not legitimately be considered by the Commission, and that without it the Commission's finding that the claimant's injury did not arise in the course of his employment was contrary to the only evidence of record, namely the claimant's own testimony.

The claimant's testimony that he fell to the ground and then felt pain in his hip, though uncontroverted, did not show that it was in this fall that the fracture of his hip—the injury for which compensation was sought—occurred. Evidence of a subsequent fall which might have caused that injury would be relevant. Because the claimant in his testimony failed to mention any subsequent fall, and because he denied that there had ever been a further injury to his hip, a statement by him that such a fall had occurred would both impeach his testimony and constitute an admission against interest. (*Cuneo Press Co. v. Industrial Com.* (1930), 341 Ill. 569, 572; *Gray v. Industrial Com.* (1979), 76 Ill. 2d 552, 560.) The Commission is always entitled, of course, to consider matters bearing on the claimant's credibility. *Forrest v. Industrial Com.* (1979), 77 Ill. 2d 86; *Watts v. Industrial Com.* (1979), 77 Ill. 2d 30.

As this court has consistently held, it is not significant that the Commission disagreed with the arbitrator (*J. J. Grady Co. v. Industrial Com.* (1970), 46 Ill. 2d 471, 473; *Orr v. Industrial Com.* (1970), 47 Ill. 2d 242, 243; *Meade v. Industrial Com.* (1971), 48 Ill. 2d 215, 221; *Crane v. Industrial Com.* (1974), 57 Ill. 2d 158, 164; *Scuderi v. Industrial Com.* (1978), 73 Ill. 2d 277, 281; *Forrest v. Industrial Com.* (1979), 77 Ill. 2d 86, 92-93). The claimant points out, however, that the Commission had before it no testimony by the author of the hospital report that the claimant had in fact made the statement attributed to him therein. Moreover, even assuming that the statement was made, the claimant asserts that he was given no opportunity to explain it.

The fifth paragraph of section 16 of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.16) provides:

> "The records kept by a hospital, certified to as true and correct by the superintendent or other officer in charge, showing the medical and surgical treatment given an injured employee in such hospital, shall be admissible without any further proof as evidence of the medical and surgical matters stated therein, but shall not be conclusive proof of such matters."

The claimant contends that the personal history of a patient is not part of his medical and surgical treatment, and that section 16 is therefore not applicable. Essentially the same argument was advanced in *Gray v. Industrial Com.*, where we questioned its soundness but judged it was not necessary to address that issue. (76 Ill. 2d 552, 560-61.) Similarly it is unnecessary to consider the contention made here, since the exhibit which included the report was introduced *in toto* by the claimant. We do not see how he can shield the report from consideration by the Commission because of its lack of authentication. As far as an opportunity to explain away the report is concerned, if such is required, that opportunity was presented when the matter was before the Commission.

On his cross-appeal the claimant, relying on *Wirth v. Industrial Com.* (1976), 63 Ill. 2d 237, asserts that the circuit court should have granted his request for interest from the date of the arbitrator's award. Our disposition of this appeal makes consideration of that claim unnecessary.

For the reasons stated in this opinion, the judgment of the circuit court reversing the decision of the Commission and reinstating the award of the arbitrator is reversed.

*Judgment reversed.*