Dwight J. HOLTER and Sandra A. Holter, individually and on behalf of others similarly situated, Appellants,

v.

MOORE AND COMPANY, William M. Moore, individually, and Timothy M. Miller, individually, and on behalf of a class composed of all other sales associates of Moore and Company acting as real estate agents for sellers of residential properties, Appellees.

No. 81–1088.

United States Court of Appeals, Tenth Circuit.

March 21, 1983.

Phillip S. Figa, Denver, Colo. (with Hugh A. Burns, Denver, Colo., on the brief) of Burns & Figa, P.C., Denver, Colo., for appellants.

James M. Lyons, Denver, Colo. (with James R. Everson, Denver, Colo., on the brief) of Rothgerber, Appel & Powers, Denver, Colo., for appellees.

Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Appellants sold their house through defendant Moore and Company (a Colorado real estate broker) and one of its licensed

sales agents. Moore charged them its standard seven percent commission for the sale. They then brought this antitrust suit against Moore, its president, and all of Moore's sales agents on behalf of themselves and a class of plaintiffs similarly situated. They alleged that the seven percent commission Moore charges for sales of residential housing and the acquiescence in that rate by Moore's sales agents is resale price maintenance between Moore and the agents as well as horizontal price fixing among the agents. The trial court granted the defendants' motion for summary judgment. It held as a matter of law that Moore and the agents constitute a single economic entity incapable of conspiring under section 1 of the Sherman Act, 15 U.S.C. § 1 (1976).

Section 1 of the Sherman Act can be violated only by concerted action by a plurality of actors. *Blankenship v. Herzfeld*, 661 F.2d 840, 846 (10th Cir.1981). Since a corporation has no way of acting except through officers and employees, the officers and employees are part of the same economic unit as the corporation for antitrust purposes. Thus, officers and employees of a corporation are generally incapable of conspiring with the corporation or with each other.[1] *Schwimmer v. Sony Corp. of America*, 677 F.2d 946, 953 (2d Cir.1982); *Tose v. First Pa. Bank*, 648 F.2d 879, 893–94 (3d Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *H & B Equipment Co. v. International Harvester Co.*, 577 F.2d 239, 244 (5th Cir.1978). In addition, antitrust defendants with separate legal labels—*e.g.*, corporation-agent—are not always capable of conspiring; they must be separate economic entities in substance as well. *See Card v. National Life*

*Insurance Co.*, 603 F.2d 828, 834 (10th Cir. 1979) (general insurance agents incapable of conspiring with insurance company). Thus, even though Moore's sales agents are taxed as independent contractors, that fact is not dispositive of this case. While a corporation acting through its officers and employees can conspire under section 1 with some outside contractors, we face here an antecedent question: whether the licensed real estate agents employed by the broker are employees or outside agents for purposes of the Sherman Act.[2]

Whether the relationship of the parties is employer-employee or principal-outside agent is normally a question of fact. *See Blankenship v. Herzfeld*, 661 F.2d at 846. However, the sufficiency of the evidence to create an issue of fact for the jury is solely a question of law. *See Ogilvie v. Fotomat Corp.*, 641 F.2d 581, 589–90 (8th Cir.1981); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524 (1971). Keeping in mind that summary judgment should be granted sparingly in antitrust cases, *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), we must determine whether there was sufficient evidence in the record to create an issue of fact for the jury on whether the defendants were separate vertical and horizontal economic units rather than a firm and its employees.

Although existing cases dealing with the "single enterprise" doctrine have been criticized as lacking in certainty,[3] we think that the immense diversity of methods of organization and types of products makes some uncertainty unavoidable, relegating us to general guidelines and case-by-case resolutions. Some courts have attempted to set

---

1. *But see post* n. 8.

2. If we determined that the agents were sufficiently independent of Moore to be "outside" contractors, there would still be a difficult question to resolve since the cases reflect uncertainty as to when outside agents are capable of conspiring with their principle for purposes of § 1 of the Sherman Act. *Compare Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) *with Harold Friedman, Inc. v. Kroger Co.*, 581 F.2d 1068 (3d Cir.1978). We

need not reach the problems raised by the outside contractor cases since we find that Moore's sales agents are not "outside contractors."

3. *See* Note, *"Conspiring Entities" under Section 1 of the Sherman Act*, 95 Harv.L.Rev. 661 (1982). Even the critics, however, confess an inability to devise a clear test of their own. *Id.* at 680.

forth generalized tests for determining when formally distinct entities are in fact separate economic entities for antitrust purposes. *See, e.g., Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,* 602 F.2d 1025, 1031 n. 5 (2d Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979). While we recognize that some of these criteria are at least in part question-begging, they nonetheless help to focus the inquiry, which centers on the independence of the allegedly conspiring actors.

■ The starting point in this case is the law of Colorado under which the parties operate.[4] Of course, state labels describing the relationship between the parties do not govern our application of a federal standard to determine whether the parties are separate economic entities. In this case, however, we look to state law as it actually limits the independence of the sales agents from Moore.[5] The sales personnel in this case are called "agents." However, a sales agent must have a license to sell real estate, Colo.Rev.Stat. § 12–61–102 (Supp.1982), and he can obtain one only if he has an agreement to be hired by a broker, *see id.* § 12–61–103(5). He may not work for any other broker.[6] The agents may perform real estate services only in the broker's name, 4 Colo.Admin.Code § 725–1E–6 (1983), and all compensation for services must be paid to the broker—not to the agent, *see* Colo.Rev.Stat. § 12–61–117 (1978). Finally, a "real estate broker shall not contract with the licensees in his employ so as to lose his authority to supervise [them]," 4 Colo.Admin.Code § 725–1E–9 (1983), and a broker can lose his license for "failing to exercise reasonable supervision over the activities of his licensed employees," Colo.Rev.Stat. § 12–61–113(1)(*o*) (1978).

In addition to this legally required supervision, Moore supplies offices, secretaries, and real estate listings, and pays some expenses for the licensed agents. The appellants rely on the following indicia of economic separateness: (a) the agents are paid a commission, (b) Moore withholds no income or FICA taxes, or retirement benefit payments from the commissions, (c) each agent must be licensed by the state, (d) agents control their own hours, and (e) the agents pay some of their own expenses.

■ Our judgment is that the Colorado statutory scheme restricts the independence of the agents so much that they must be considered "employees" under section 1 of the Sherman Act. The Colorado provisions simply do not allow the agents to take any independent course of action that would be competitive with Moore. The nature of the relationship that Moore and the agents are legally required to maintain is so overwhelmingly one of superior and subordinate that the indicia relied on by the appellants are inconsequential. Payment by commission and the agents' concomitant incurrence of some costs are not dispositive factors in determining whether there is one or many entities. *See American Oil Co. v. McMullin,* 508 F.2d 1345, 1351–52 (10th Cir.1975). The requirement that the agents have licenses is consistent with their status as employees; it is no different from the case of beauticians employed by a single beauty parlor, Colo.Rev.Stat. § 12–8–120(2) (1978), or as-

---

**4.** By considering the state law under which the parties operate, we are simply examining the undisputed facts to determine whether the agents are Moore's "employees" under the doctrine that holds an employee incapable of conspiring with his corporate employer under § 1 of the Sherman Act. We are *not* invoking the immunity doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

**5.** By rendering a corporation capable of acting only through its employees, a state's corporation law renders the corporation and the employees incapable of acting independently of each other hence incapable of conspiring under

§ 1. Similarly, state law can render an agent capable of acting only under the supervision of a single employer, precluding the agent from acting independently of, or conspiring with, the employer. In either case, a federal standard of separateness governs.

**6.** Colorado law precludes a sales agent from working for more than one broker by (a) limiting each agent to one license, Colo.Rev.Stat. § 12–61–109(4) (Supp.1982), and (b) requiring an agent's license to be in the custody of his broker, *id.* § 12–61–104(1) (1978).

sociates employed by a law firm, *id.* § 12–5–112. The agents' control over their hours, although a discretion not enjoyed by all employees, does not evidence sufficient independence to counteract the requirements that the agents work only for Moore, offer all of their services in Moore's name, be compensated only by Moore, and contract with Moore only in a way that enables Moore to have enough control to perform its duty to supervise them. Similarly, the agents' "independent contractor" label for tax purposes does not negate the substantial control that Moore is legally obligated to exercise over the agents' performance of their employment. Thus, when the components of the relationship are examined individually and collectively, we agree with the Colorado Supreme Court that the Colorado real estate laws require Moore and its agents to maintain "an employer-employee relationship because it [not only] clothes the broker ... with the right to control his salesmen but it also charges him with a duty to do so." *Faith Realty & Development Co. v. Industrial Comm'n,* 170 Colo. 215, 460 P.2d 228, 230 (1969).

We conclude that the agents should be considered employees of Moore for antitrust purposes.[7] It follows that the agents cannot conspire with Moore or each other absent invocation of the "independent personal stake" doctrine, which is inapplicable to this case.[8]

AFFIRMED.

---

7. This holding forecloses the appellants' argument that the appellees are capable of conspiring as joint venturers. Of course, it does not affect the applicability of § 1 of the Sherman Act to concerted action by more than one broker or agents of different brokers.

8. Some courts have held that an officer of a corporation can conspire with the corporation if the officer will personally benefit from conspiring with the corporation to restrain trade. *E.g., H & B Equip. Co. v. International Harvest-*er,* 577 F.2d 239, 244 (5th Cir.1978); *Greenville Publishing Co. v. Daily Reflector, Inc.,* 496 F.2d 391, 399 (4th Cir.1974). This "independent personal stake" doctrine applies only when the officer has an outside economic interest, such as ownership of a competing corporation, through which he will benefit from the restraint. The appellants have not identified any such outside interest held by the agents. Thus, the doctrine does not apply to the facts of this case.