**Homer C. BLANKENSHIP, an individual, and Herzfeld's Beauty & Barber Supply of Muskogee, Inc., an Oklahoma corporation, Plaintiffs-Appellants,**

**v.**

**Gene HERZFELD, an individual; Herzfeld's Beauty & Barber Supply, a partnership; Herzfeld's Beauty & Barber Supply, Inc., an Oklahoma corporation, Oklahoma City; and Herzfeld's Beauty & Barber Supply of Amarillo, Inc., a foreign corporation, Defendants-Appellees,**

**Helene Curtis Industries, Inc., a foreign corporation, Defendant.**

**No. 82–1792.**

United States Court of Appeals, Tenth Circuit.

Nov. 15, 1983.

---

Frank M. Hagedorn of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., for plaintiffs-appellants.

David O. Harris, Tulsa, Okl., and Jack Mattingly, Seminole, Okl., for defendants-appellees.

Before McWILLIAMS, BARRETT and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This appeal presents the question whether three affiliated businesses and one of their owners constitute separate entities capable of conspiring within the meaning of section 1 et seq. of the Sherman Act, 15 U.S.C. § 1 et seq. (1982). The district court held that they do not under the facts of this case, and we affirm.

## I.

### PRIOR PROCEEDINGS

Herzfeld's Beauty & Barber Supply of Muskogee brought an action under sections 1 and 2 of the Sherman Act against Herzfeld's Beauty & Barber Supply, Inc. of Oklahoma City, Herzfeld's Beauty & Barber Supply, Inc. of Amarillo, Herzfeld's Beauty & Barber Supply, a Tulsa partnership, and Helene Curtis Industries, Inc. After plaintiff had presented its case in chief to the court, the judge granted defendants' motion for dismissal under Fed.R.Civ.P. 41(b). The court held that plaintiff had failed to show a right to relief under section 1 of the Sherman Act because it had not proved a combination or conspiracy in restraint of trade. The court also dismissed the section 2 claim against all defendants.

In the first appeal of these rulings, *Blankenship v. Herzfeld,* 661 F.2d 840 (10th Cir.1981) (*Herzfeld I*), we affirmed dismissal of the section 2 claim against all defendants and the section 1 claim against Helene Curtis. However, we remanded the case to the district court for evidentiary findings on whether the Herzfeld defendants constituted separate organizations capable of conspiring within the meaning of section 1.

Upon remand, the court found "it is more probably true than not true that, for purposes of the Sherman Antitrust Act, the Herzfeld defendants constitute one organization, and there is no plurality of actors between any of the Herzfeld defendants." Rec., vol. I, at 78.

In this appeal, plaintiff's primary contention is that the court's findings on the conspiracy issue are clearly erroneous. *See* Fed.R.Civ.P. 52(a). Plaintiff also alleges that the court erred in adopting defendants' proposed findings of fact.

## II.

### RELEVANT FACTS

A detailed factual background of this case is set out in *Herzfeld I,* 661 F.2d at 841–43. The facts relevant to the conspiracy issue are as follows. The Muskogee store was organized in 1936 by Virgil Herzfeld as a distributor of beauty and barber supplies. The Tulsa store was formed in 1957 by Virgil's sons, Gene and Kenneth Herzfeld, as an equal partnership managed by Gene. By agreement between the father and his sons, the Tulsa store was given the Herzfeld name in order to take advantage of the goodwill that the father had established with manufacturers and salon operators in eastern Oklahoma. The father and his sons agreed to certain sales routes or territories so that sales personnel from one store would not create confusion by calling on customers of the other store. From time to time, these territories were adjusted.

In 1965, the third store was opened in Oklahoma City. Because additional capital was needed, this store was formed as a corporation. Virgil, Gene, and Kenneth were investors, along with Gerald Seitz and plaintiff, Carl Blankenship, who was then an employee in the Muskogee store. The Herzfelds considered the new store, managed by Kenneth, as an expansion of the existing Herzfeld businesses. Gene Herzfeld testified that the agreement not to compete in another store's territory was

extended to include the Oklahoma City store:

"A. Nothing changed, to my recall, between Tulsa and Muskogee. Now, an updating to territories and a new division of lines, and I'm referring to boundaries, was re-established. We took several towns, and I mean several, I don't mean just a few, we took several towns and some large towns that was closer to Oklahoma City, and we transferred the complete accounts receivable to the Oklahoma City store as we felt that we could more better service the customers, that the towns involved was closer to where the Oklahoma City store would be, and that in that updating it was actually a one way deal. Tulsa gave away X amount of territory to Oklahoma City so that it would have an adequate area in which to expand from the, and I'm using a line of, say, the very downtown part of Oklahoma City, and some to their east. Had we not given them that type of restructuring, they would have been held to a line that would, oh, run almost on a straight line from the City of Norman up to about Enid, and they would have been limited to only distribute products to the City of Oklahoma City and west. So our intention was to service the customer the best we could, we gave them these complete towns.

"Q. Then you did have an agreement with Oklahoma City, Tulsa, not to compete with each other?

"A. Yes."

Rec., vol. III, at 1200–01.

The Amarillo store was incorporated in 1969. The investors were the same as in the Oklahoma City store. Gerald Seitz, an investor and employee in the Oklahoma City store, became the manager. The same type of territorial division was made between the Oklahoma City and Amarillo stores as had been made between Tulsa and Oklahoma City.

Blankenship began working for Virgil Herzfeld in 1947 as a bookkeeper and order packer in the Muskogee store. He subsequently became a salesman and the mana-

ger of the Muskogee store. He was an investor in both the Oklahoma City and Amarillo stores and he acquired a 20% interest in the Muskogee store. In 1971, he purchased the Muskogee store from Virgil Herzfeld. As part of that transaction, he sold his interests in the Oklahoma City and Amarillo stores to Virgil. He brought this action in 1976, contending that the Herzfeld defendants were conspiring to prevent the Muskogee store from competing in their territories.

After Blankenship's acquisition of the Muskogee store, Virgil, Gene, Kenneth, and Gerald Seitz owned all of the stock in the Oklahoma City and Amarillo stores. Gene and Kenneth owned the Tulsa store as equal partners. Thus, the alleged individual co-conspirator, Gene Herzfeld, held an ownership interest in the three alleged co-conspirator stores. In addition to being manager of the Tulsa store, he was an officer and director in both the Oklahoma City and Amarillo stores. The only other officers and directors of the Oklahoma City and Amarillo stores were Virgil and Kenneth Herzfeld and Gerald Seitz.

### III.

### AFFILIATED BUSINESSES AS SINGLE ACTOR

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, provides that every contract, combination, or conspiracy in restraint of trade is illegal. A conspiracy or combination under section 1 necessarily involves "concerted action by a plurality of actors." *Holter v. Moore & Co.,* 702 F.2d 854, 855 (10th Cir.1983); *Skyview Distributing, Inc. v. Miller Brewing Co.,* 620 F.2d 750, 752 (10th Cir.1980). In this appeal, we must consider under what circumstances separate legal entities are in effect a single organization incapable of conspiracy under section 1.

The Supreme Court has held that distinct legal units may not evade antitrust liability under section 1 *solely* because they are commonly owned. *See, e.g., United States v. Yellow Cab Co.,* 332 U.S. 218, 227, 67 S.Ct. 1560, 1565, 91 L.Ed. 2010 (1947). However,

the lower courts have drawn differing conclusions as to when, if ever, legally distinct but economically related units constitute one actor for purposes of section 1. "The Third and Fifth Circuits have held that, as a matter of law, a parent and its wholly owned subsidiaries, when separately incorporated, together provide the requisite plurality of actors." *Ogilvie v. Fotomat Corp.,* 641 F.2d 581, 588 (8th Cir.1981) (citing cases); *see also* M. Handler & T. Smart, *The Present Status of the Intracorporate Conspiracy Doctrine,* 3 Cardozo L.Rev. 23, 38 (1981) (hereinafter cited as *Intracorporate Conspiracy* ). This approach has been substantially criticized as exalting form over substance contrary to the demands of economic reality and the purposes of the antitrust laws. *See, e.g., Ogilvie,* 641 F.2d at 588–89; *Intracorporate Conspiracy, supra,* at 44–46; Note, *"Conspiring Entities" Under Section 1 of the Sherman Act,* 95 Harv.L.Rev. 661, 666–68 (1982) (hereinafter cited as *Conspiring Entities* ).

The Seventh, Eighth, and Ninth Circuits have concluded that "the capacity of related corporations to conspire, in violation of section 1, is a question of fact to be answered under the circumstances of each case." *Ogilvie,* 641 F.2d at 588 (citing cases); *see also Intracorporate Conspiracy, supra,* at 55–61; *Conspiring Entities, supra,* at 670–71. We adopted this method of analysis in addressing the related issue of corporation-agent conspiracy under section 1. *See Holter,* 702 F.2d at 855. "[A]ntitrust defendants with separate legal labels ... are not always capable of conspiring; they must be separate economic entities in substance as well." *Id.* We conclude that this approach is equally applicable to the question of inter-enterprise conspiracy. Factors relevant to this inquiry include

"the extent of the integration of ownership, whether the two corporations have separate managerial staffs, the extent of the identity of the business they conduct, the extent to which significant efficiencies would be sacrificed if they were required to act as two firms, [and] their history, whether they functioned as sepa-

rate firms before being partially integrated . . . ."

L. Sullivan, *Antitrust* § 114, at 328 (1977); *see also Ogilvie,* 641 F.2d at 589.

In this case, the district court found that:

"The Herzfeld defendants have always engaged in mutually advantageous business practices, including the exchange of inventory between stores at manufacturer's cost, joint purchasing, utilizing one store's credit on purchases distributed to all stores, 'drop-shipping' to each other's customers at cost, redistribution of inventory between stores, sharing manufacturer-sponsored trips, sharing the same booth at trade shows, each store had a rubber shipping stamp for the other stores, one store handled the insurance for all stores, and one store would have business forms printed for all stores and distribute them to the other stores."

Rec., vol. I, at 77 (record citations omitted). The court further found that the Herzfeld defendants had always agreed not to compete, that the Herzfelds considered and treated the separate stores as expansions of the original business, and that they had represented themselves as one organization to Helene Curtis. *Id.* at 77–78.

■ Findings made pursuant to a dismissal under Fed.R.Civ.P. 41(b) may not be set aside unless they are clearly erroneous. *Herzfeld I,* 661 F.2d at 844–45. After reviewing the record, we do not have a definite and firm conviction that the trial court was mistaken. *See Nulf v. International Paper Co.,* 656 F.2d 553, 558 (10th Cir.1981). The court's findings are supported by the evidence. In particular, we note that the Herzfeld defendants shared common ownership and officers, and that they had no prior history of competition among themselves which was eliminated by their interrelationship.

Given all of the facts presented, we believe the trial court correctly concluded that defendants are not separate organizations for purposes of the antitrust laws.[1] As a practical matter, this family owned and operated business constitutes a single, integrated enterprise rather than the plurality of actors contemplated by section 1 of the Sherman Act.

## IV.

### USE OF DEFENDANTS' PROPOSED FINDINGS

■ We now turn to plaintiffs' argument that the district court erred in adopting the fact findings proposed by defendants.

In *Ramey Construction Co. v. Apache Tribe,* 616 F.2d 464 (10th Cir.1980), we held that "[e]ven though we may not summarily reject findings adopted verbatim, we must view the challenged findings and the record as a whole with a more critical eye to insure that the trial court has adequately performed its judicial function." *Id.* at 467.

The trial court in this case drew heavily on defendants' articulation of the facts and the law, and its findings and conclusions are brief. However, the facts are largely undisputed, and the court's findings provide sufficient record references to enable us to apply the clearly erroneous standard. Moreover, the basis and authority for the court's legal conclusions are adequately stated for purposes of appellate review. We conclude that the findings and conclusions are not grounds for reversal.

The judgment is affirmed.

---

1.  Plaintiff cites *United States v. Topco Associates,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), in support of its argument that defendants here are separate economic entities for antitrust purposes. That case is factually distinguishable. *Topco* involved a cooperative association of *independently* owned and operated grocery chains. No one grocery business operated under the Topco name, and there was no indication of cross ownership and/or management among the member chains. Whether the members were capable of conspiring was not an issue before the Court.