No. 14,365.

Rogers et al. *v*. Solem et al.
(83 P. [2d] 154)

Decided July 11, 1938. On petition for rehearing judgment affirmed, and rehearing denied September 19, 1938.

Mr. FRANK C. WEST, for plaintiffs in error.

Mr. B. F. REED, Messrs. RINN & CONNELL, Mr. BYRON G. ROGERS, Attorney General, Mr. LOUIS SCHIFF, Assistant, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a workmen's compensation case. Claimant Solem alleges that he suffered an injury to his right eye while drilling in a mine, when pieces of steel and rock struck the eyeball. Later the eye had to be removed. The commission found for the claimant, which finding and award based thereon was affirmed by the district court. Plaintiffs in error seek reversal.

In considering this matter, it is desirable to have before us the finding of the commission, because, if the evidence supports the finding, the judgment, necessarily, will be affirmed. The finding was as follows:

"In the above entitled cause, the Commission having further reviewed the entire file and now being fully advised in the premises finds:

"That Sadie B. Rogers and Margaret D. Rogers are owners of certain real estate known as the Lower Rogers Tract No. 7, situate, lying and being in Boulder County, Colorado. In the management of this property, the owners are represented by their agent, Walter Loesch, who in turn takes his instructions from Platt Rogers. Mr. Rogers has the general supervisory control over this and other property belonging to these owners. He approves any and all leases before they are made, collects royalties and pays taxes. He maintains, however, that he acts only for his mother, Margaret D. Rogers, even though any function he performs is as beneficial to his aunt, Sadie B. Rogers, as it is to his mother. Though his authority is limited, Walter Loesch is the agent in actual charge of the property.

"About the middle of October, 1936, Loesch and the claimant in this case, undertook to remove ore from the property above mentioned. Loesch, acting under his special authority and claimant under a verbal lease from him. As to the claimant, the place of operations, period of time, and royalties to be paid, were definite.

"The Commission finds that the claimant sustained an accident arising out of and in the course of his employment November 27, 1936, and left work upon that date. His temporary disability terminated March 17, 1937. His average weekly wages were $14.02. By reason of the injury claimant has sustained the enucleation of the right eye.

"When apprized of the injury to this claimant and his desperate financial circumstances, Platt Rogers transmitted to Walter Loesch his personal check for $200.00 to be used by Loesch for the benefit of the claimant in any manner he saw fit; $150.00 of this amount was actually expended for claimant's relief.

"The Commission finds from the evidence that Platt Rogers was the actual agent of his mother, Margaret D. Rogers, and a constructive agent of his aunt, Sadie B. Rogers, and that Walter Loesch was the special agent

of both; that the payment of $150.00 by and through their agents constitutes the payment of compensation within the meaning of Section 84 of the Workmen's Compensation Act, and that, therefore, claimant's claim against Sadie B. Rogers and Margaret D. Rogers is not barred thereby."

Three principal grounds are urged for reversal: (1) There was no such legal relationship existing between claimant and plaintiffs in error as would make them liable to claimant for compensation. (2) Payment of $150 to claimant was not "payment of compensation" within the exception of the six month's statute of limitations so as to bind the plaintiffs in error. (3) Removal of the eye was not made necessary by the alleged accident.

1. The legal relationship necessary to support liability in claims of this character is as follows: "Any person, company or corporation operating or engaged in or conducting any business by leasing, or contracting out any part or all of the work thereof to any lessee, sub-lessee, contractor or sub-contractor, shall * * * be construed to be and be an employer as defined in this article, and shall be liable * * *." '35 C. S. A., vol. 3, c. 97, §328, C. L. §4423.

The testimony of Platt Rogers, son of Margaret D. Rogers and nephew of Sadie B. Rogers, the owners of the property, was in part as follows: "I do not exactly represent my mother's interest in this land, except that she generally does what I recommend." "Mr. Loesch is the agent in some capacity for the owners, he represents them both." "He is subject to my direction, not because he has to be but simply because I go up there and he is inclined to do what I tell him." "I have received royalties on some of this land for several years." "People were working there and paid royalties to the owners." "The mill paid the checks to me for the owners, my aunt and mother." "I just look after my mother's affairs." "Since my father died nearly ten

years ago." "Loesch has certain authority as the agent, caretaker, guard, or whatever you choose to call it, of the property,—it is hard to describe Loesch's position there," but he "has authority to show pieces of land and make arrangements for leases." "I would not undertake to say how far Mr. Loesch could go legally, in representing my aunt." Quotations are from an analysis of the testimony made by the plaintiffs in error, and are substantially as appear in the record.

Prior to November 1, 1936, claimant had been negotiating with Loesch for a deal to work some of the property, and finally agreed on "No. 7, the lower Rogers Patent."

Loesch testified: "I told him he would have to pay twenty per cent royalty on the ore he took out."

Pursuant to the arrangement, claimant went to work at the place designated, Loesch being with him much of the time. Solem said: "We were in together 50-50. No written lease was ever entered into or signed."

We deem this testimony sufficient to justify the commission's finding that the arrangement was covered by the statute above quoted. We have said of this section that its purpose is to prevent evasion of the insurance requirements of the act by leasing. *Industrial Commission v. Bracken,* 83 Colo. 72, 262 Pac. 521. Plaintiffs in error carried no compensation insurance.

2. Was the payment of $150 out of the proceeds of Platt Rogers' personal check for the relief of the claimant a payment of compensation within the terms of the exception contained in section 363, chapter 97, '35 C. S. A., so as to toll the six months statute of limitations? On this point we may say that there was no question as to the claim against Platt Rogers being filed in apt time, and it would follow, that when, after the action was started, permission was given to bring in the plaintiffs in error as proper parties and the relationship of agency established as between them and Platt Rogers, the rule that notice to the agent is notice to the principal

is applicable. We are not impressed with the contention that the money was a loan or something else. It is admitted that $150 of the $200 was used to pay hospital and doctor bills. We think it was "payment of compensation" within the meaning of section 363, chapter 97, supra.

3. Plaintiffs in error contend that the removal of the eye was not necessitated by the alleged accident. The commission first found that it was unable to determine this as a fact, but upon further hearing, as the above recited supplemental award discloses, the commission found that "By reason of the injury claimant has sustained the enucleation of the right eye." It is admitted that the testimony on this point is in conflict, but two competent eye specialists testified respectively in response to specific questions as follows: Question: "From the history you obtained and your examination, what in your opinion, doctor, was the cause of the condition of the right eye which resulted in its enucleation? Answer: "I feel that there was an acute iritis caused by the traumatic injury at the time he mentioned that Friday afternoon, when the steel, and probably metal, splattered his face." The second doctor, in answer to the question, "Boiling the thing down, doctor, under those circumstances, in your opinion, was the trauma the cause of the enucleation of the eye?" stated: "Certainly in a large measure, even if you agree it was of an endogenous origin, the ineffective end of it was in the blood." While this testimony is not particularly comprehensive or convincing, coupled with the acknowledged injury and other circumstances in the history of the case, we cannot say as a matter of law that it is insufficient to support the commission's finding based thereon in this behalf.

Perceiving no error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND concur.