No. 18,255.

RCS LUMBER COMPANY, ET AL *v.*
RUFINA JOSEPHINE SANCHEZ, ET AL.
(316 P. [2d] 1045)

Decided October 28, 1957.

Mr. ALIOUS ROCKETT, Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for plaintiff in error State Compensation Insurance Fund.

Mr. JOHN IRA GREEN, for plaintiff in error RCS Lumber Company.

Mr. WHITFORD W. MYERS, for defendant in error Rufina Josephine Sanchez.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error, RCS Lumber Company, by name or as the employer, and to plaintiff in error, State Compensation Insurance Fund, as the insurer. Defendant in error, Rufina Josephine Sanchez, will be referred to by name or as the claimant, and defendant in error Industrial Commission of Colorado, as the Commission. We will refer to the deceased, Victor Sanchez, by name or as the deceased.

Victor Sanchez suffered fatal injuries on November 1, 1955, while unloading lumber from his truck in the yard of the RCS Lumber Company at Antonito, Colorado. His widow, Rufina Sanchez, filed a claim with the Commission on behalf of herself and six minor children.

The case comes here by writ of error to review the judgment of the district court affirming an award of the Commission. The grounds urged for reversal may be summarized as follows: The findings of fact and award of the Commission affirmed by the district court, to the effect that deceased was a statutory or constructive employee of the RCS Lumber Company under section 49 of the Workmen's Compensation Act (C.R.S. 1953, 81-9-1), are not supported by the evidence and are contrary to law.

August 24, 1955, the deceased accompanied by his wife arrived at the office of the RCS Lumber Company, Antonito, Colorado, in search of employment as a truck driver. He asked to see "the boss" and was directed to an office. His wife could not hear the conversation but when the door was opened she heard a man say "in fact

we could use twenty trucks at this time." When deceased came out he told his wife that he had a job. At the time of the hearing no representative of the RCS Lumber Company could be found to throw further light on the conversation concerning employment, but Bennie Velasquez, a fellow truck driver, testified to the methods used in this same office: "When Dad and I came to ask him for a job he says, 'You go up in the woods and get it and we'll pay for it.'" The deceased was to furnish his own truck and was instructed to seek out any one of various mill operators who were cutting rough lumber in the New Mexico mountains, obtain a load of lumber and return it by truck to the yard of the RCS Lumber Company in Antonito, Colorado. Upon arrival, deceased would assist the yard employees in unloading and measuring the board feet of lumber hauled. From August 26 to November 1, 1955, deceased made many such trips. Each time he returned to Antonito he would be given a memorandum which bore the printed heading of the RCS Lumber Company and showed the amount of lumber hauled and from what mill received. It was signed by an agent of the RCS Lumber Company. On Friday of each week deceased would go to the RCS office at Antonito and be paid by check of the RCS Lumber Company in the amount represented by these memoranda and the company records. The company insisted that in paying these truck drivers it acted merely as a "disbursing agent" on behalf of the various New Mexico mill operators.

The evidence indicates in general that the RCS Lumber Company was engaged in the business of producing finished lumber. It conducted this business by purchasing timber on the land and then contracting with certain New Mexico operators to cut the timber in the rough and deliver it to the mill at Antonito, Colorado, at a certain price per thousand board feet. These operators employed certain haulers who went from sawmill to saw-

mill to see if their services were required to transport the lumber to Antonito. The haulers were paid by the RCS Lumber Company at a certain rate per thousand board feet, which payment was charged to the mill operator. Deceased was unloading lumber he brought in to the RCS Lumber Company's yard from a sawmill when he received the injury resulting in his death.

Question to be Determined.

*Was deceased a statutory employee of the RCS Lumber Company within the meaning of C.R.S. 1953, 81-9-1, which provides in pertinent part that, "Any * * * corporation * * * engaged in * * * any business by leasing, or contracting out any part or all of the work thereof to any * * * contractor or subcontractor, * * * shall be construed to be and be an employer as defined in this chapter, and shall be liable * * * to pay compensation for injury or death resulting therefrom to said * * * contractors and subcontractors and their employees * * * "?*

█ The question is answered in the affirmative. The "Cutting Contract" between the RCS Lumber Company and each sawmill operator describes the RCS Lumber Company as a Colorado corporation, having a place of business at Antonito, Colorado, and in paragraph 3 provides in part:

" * * * and in the event second party is not equipped or shall not desire to haul said lumber or logs as aforesaid he shall employ independent third party trucks, equipment, loaders and truck drivers to load, transport and unload said logs or lumber to first party's lumber yards at Antonito, Colorado, or the railroad loading or terminal point, as aforesaid, all of said loading, hauling and unloading to be the sole responsibility of second party."

The contract was signed by both parties at Antonito, Colorado. It was prepared for acknowledgment by a notary public in the State of Colorado, County of Conejos. The original contract in this case having been re-

moved by the RCS Lumber Company to Jackson, Mississippi, and the form copy having been introduced in evidence without objection, and its general terms conceded, it must be presumed to be identical with the original contract and to have been executed and acknowledged in Colorado.

The referee and the Commission correctly concluded that the "independent third party" provisions of the contract concerning trucks and drivers, and other provisions designed to establish an independent contractor status, were not controlling as to any part of the services rendered in Colorado, or any accident in Colorado. The provisions of the statute of Colorado must be applied to those facts, and the contract cannot prevent the application thereof. *Bothwell v. Buckbee-Mears Co.,* 275 U.S. 274, 48 S.Ct. 124, 72 L.Ed. 277. It is noteworthy that the contract uses the mandatory "shall" and affirmatively requires the cutter, or second party, to perform, or procure to be performed, certain services in the State of Colorado, namely, the transportation of lumber from the New Mexico-Colorado line to the mill, and delivery of the load to the mill in Antonito, Colorado. It is significant that the RCS Lumber Company was the owner of the logs or rough lumber at all times from the moment the trees were cut down until receipt of the rough cut lumber at the mill.

We deem it unnecessary to lengthen this opinion with quotations from the record of testimony bearing upon the question of whether the company was engaged in "contracting out" a portion of its work so as to come within the provisions of the statute. Suffice it to say that the testimony of officials of the company contained admissions, evasions, contradictions and interdepartmental cost accounting complexities which are sufficient to support the facts found by the referee and the Commission. The "cutting contract" and the testimony make a classic "contracting out" pattern of attempted avoid-

ance of the law governing workmen's compensation. *Rogers, et al. v. Solem, et al.,* 103 Colo. 52, 83 P. (2d) 154; 1 Larson on Workmen's Compensation, 724, sec. 49.11. We approve the referee's finding and the Commission's order that, "the R.C.S. Lumber Company maintains control of the operation from its inception to its completion." The Findings and Award of the Commission include the following:

"The Referee finds further that the decedent was hired in Colorado and that a contract of hire, express or implied, was entered into between the decedent and the RCS Lumber Company at Antonito, Colorado. That pursuant to this contract of hire the decedent hauled lumber from the mills in New Mexico to Antonito, Colorado, at a fixed rate per thousand board feet. The decedent performed a material part of his services in Colorado, and the fatal accident occurred in Colorado, upon the premises of the employer, and arose out of and in the course of the decedent's employment.

\* \* \*

"The Referee further finds that RCS Lumber Company conducted its operations by contracting out a part of the work, namely: the logging, cutting and hauling operations to contractors and subcontractors. Such contractors and subcontractors are employees of the RCS Lumber Company within the meaning of the Workmen's Compensation Act of Colorado and must be construed to be subject to said Act where any material part of the contracted or subcontracted operation is performed in Colorado, or when the accident complained of occurs in Colorado."

There is ample evidence to sustain these findings. Pertinent authorities upholding an award of compensation under findings of fact of similar import are the following: *Globe Cotton Oil Mills v. Ind. Acc. Commission,* 64 Cal. App. 307, 221 Pac. 658; *Home Insurance Co. v. Hepp,* 91 Colo. 495, 15 P. (2d) 1082; *U. S. F. & G. Co.*

*v. Ind·Comm.*, 99 Colo. 280, 61 P. (2d) 1033; *Industrial Comm. v. Santarelli*, 109 Colo. 84, 122 P. (2d) 239.

The judgment is affirmed.