No. 23883.

FAITH REALTY & DEVELOPMENT COMPANY *v.* INDUSTRIAL COMMISSION OF COLORADO.
(460 P.2d 228)

Decided November 3, 1969.

216

Robert W. Johnson, for plaintiff in error.

Alious Rockett, Feay Burton Smith, Jr., William J. Baum, for defendant in error.

*In Department.*

Opinion by Mr. Justice Hodges.

The parties will be referred to as they appeared in the trial court where the plaintiff in error was the defendant and the defendant in error was the plaintiff.

Plaintiff filed this action in the trial court to recover the sum of $343 as the balance due for premiums on a workmen's compensation insurance policy issued by the State Compensation Fund. Defendant resisted the claim on the contention that it hired a number of real estate salesmen who were agents or independent contractors and not employees; and therefore, the policy should not have covered the salesmen and the premium balance of $343 was not recoverable.

After the complaint and answer were filed, interroga-

tories were submitted and answered by the defendant. Also, the deposition of C. V. LeForce, president of the defendant company, was taken. The plaintiff then filed a motion for summary judgment which was granted and the trial court entered judgment for the plaintiff, the Industrial Commission, for $343.

■ The sole question on this writ of error is: Were the real estate salesmen, who were engaged by the defendant, a real estate brokerage company, employees within the intent and meaning of the Workmen's Compensation Act of Colorado? We answer this question in the affirmative as did the trial court, and we therefore affirm this judgment.

The defendant in support of its argument that its real estate salesmen are independent contractors and therefore, do not come within the coverage of the workmen's compensation insurance policy, maintains that its office manual under which its real estate salesmen work, specifies that these salesmen shall be deemed to be independent contractors. This manual also provides that the salesmen shall be compensated in the form of commissions only and shall be liable for their own hospitalization insurance, car insurance, business cards, name plates, long distance telephone calls, license fees, organization dues, and convention registration fees. The manual also states that the real estate salesman must provide his own health and accident coverage, unemployment benefits, and such other coverage as he may desire.

The manual provides that the defendant broker has the right to discharge a salesman at any time if it should appear to the defendant that the salesman has been dishonest, incompetent, negligent, unfaithful, or inefficient in the defendant company's best interest. The manual also states that the defendant will not withhold from the salesman's commission any federal or state income taxes or social security taxes.

■■ We are not of the view that the provisions of

this office manual under which the real estate salesmen are hired and render service for the defendant broker, are the exclusive considerations which determine the relationship between the defendant and its real estate salesmen. This relationship must also be viewed in the light of other considerations and the additional facts which are undisputed in this record. If all the facts of this case reveal an employer-employee relationship, as we hold they do, the characterization of the real estate salesman as an independent contractor in the manual is ineffectual.

■ Our Workmen's Compensation Act at C.R.S. 1963, 81-2-7 (2) defines employees as:

"Every person in the service of any person, association of persons, firm, private corporation, including any public service corporation, personal representative, assignee, trustee, or receiver, under any contract of hire, express or implied, including aliens, and also including minors, whether lawfully or unlawfully employed . . ."

With the above definition in mind, the following facts as shown from the deposition of Mr. LeForce, the president of the defendant company, reveal, in our view, an implied contract of hire of an employee who shall render service under the control and direction of the defendant. It is noted that although the term independent contractor was not defined in the manual, Mr. LeForce, when asked by plaintiff's counsel what he and the salesmen he employed understood by that term, replied: "Well, I believe they understand that they are in the same status as a person that I would hire to perform some service for me . . . ." Throughout his deposition, Mr. LeForce spoke in terms of hiring salesmen whose duty it was to represent the defendant company in the listing and in the sale of real estate and business opportunities for the company. Also, he testified that the defendant company provided its salesmen with office space, clerical and secretarial help, and that although salesmen were not required to work during any specified hours, the

defendant broker did require that each salesman work in the office on a rotating basis so that a salesman would be on the premises at all times to handle "walk in clients."

We find further support for our conclusion that the salesmen are employees in the Real Estate Brokers and Salesmen's Act, C.R.S. 1963, Chapter 117, which, while not controlling on the question, does shed some light on it.

■ Page one of the Real Estate Manual, published by the Colorado Real Estate Commission states:

"The Colorado Real Estate Broker and Salesman License Law was passed, not to make a monopoly of the real estate business, but to protect the people of the State of Colorado."

To accomplish that purpose the Act, we think, envisions an employer-employee relationship because it clothes the broker not only with the right to control his salesmen but it also charges him with a duty to do so C.R.S. 1963, 117-1-5 (5).

■ C.R.S. 1963, 117-1-2 defines a real estate salesman as any person who is *employed* directly or indirectly by a real estate broker to do certain acts. A broker must retain the license of each salesman he *employs* (C.R.S. 1963, 117-1-6) and return the license to the real estate commission when such *employment* is terminated (C.R.S. 1963, 117-1-7). Also, the license of a broker or salesman is subject to revocation if the licensee represents or attempts to represent, without consent, a real estate broker other than his *employer* (C.R.S. 1963, 117-1-12 (f)). In addition, a broker's license is subject to revocation if he fails to exercise reasonable supervision over his licensed *employees* (C.R.S. 1963, 117-1-12 (p) and 117-1-16). It is the right, duty and power to control that are important factors in distinguishing a servant or employee from a contractor. *Industrial Commission v. Bonfils,* 78 Colo. 306, 241 P. 735.

■ Another test to determine whether one is an employee or an independent contractor is the right to termi-

nate the relationship without liability which appears to be present here. Where such right does exist, the workman is usually a servant and where it does not exist, he is usually a contractor. *Brush Hay and Milling Co. v. Small,* 154 Colo. 11, 388 P.2d 84. As noted above, the company manual provides that the defendant company had the right to discharge a salesman at any time under a number of circumstances which are so broad as to indicate to us a right to discharge without consequence.

We have previously held that the purpose of C.R.S. 1963, 81-9-1(1), which defines a constructive employee, is to prevent evasion of the insurance contract by leasing. *Rogers v. Solem,* 103 Colo. 52, 83 P.2d 154; *Industrial Commission v. Bracken,* 83 Colo. 72, 262 P. 521. We think it is equally the purpose of the statute to prevent the avoidance of the insurance contract by calling the relation one of principal and independent contractor when such relation does not exist. The statute is intended to cover every business conducted by one through the activities of another under any kind of a contract. *Rhodes v. Industrial Commission,* 99 Colo. 271, 61 P.2d 1035. The provisions of the statute must be applied to the facts and the company's designation of salesmen as independent contractors cannot control that application. *RCS Lumber Company v. Sanchez,* 136 Colo. 351, 316 P.2d 1045.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE PRINGLE and MR. JUSTICE KELLEY concur.