DANA'S HOUSEKEEPING, Petitioner,

v.

Sandra W. BUTTERFIELD and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 89CA2132.

Colorado Court of Appeals, Div. II.

Nov. 8, 1990.

Rehearing Denied Dec. 27, 1990.

Certiorari Denied April 8, 1991.

Donald A. Brenner, Denver, for petitioner.

Barbara J. Lindstrom, Denver, for respondent Sandra W. Butterfield.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn A. Boyd, Jeanne Labuda, Asst. Attys. Gen., Denver, for respondent Indus. Claim Appeals Office.

Opinion by Judge DUBOFSKY.

Dana's Housekeeping (Dana's), employer, seeks review of a final order of the Industrial Claim Appeals Office (Panel) determining that Sandra W. Butterfield, claimant, was its employee within the meaning of the Workers' Compensation Act when she was injured. We affirm.

In April 1988, claimant, while working as a domestic at the private home of a Dana's client, fell down a flight of stairs and in-

jured her left ankle and upper back. She immediately reported this injury to an employee of Dana's and subsequently sought workers' compensation benefits on the basis that Dana's was her employer. Dana's denied such relationship, arguing that claimant was an independent contractor. Dana's was granted a license as an employment agency through the City and County of Denver. When claimant went to work as a domestic through Dana's she signed an agreement concerning her employment. The top of the agreement states:

"Dana's Housekeeping, the West's largest housekeeper (and still growing)"

The agreement indicates that Dana's will promote and advertise itself in order to maintain employment for claimant. The agreement also indicates that both parties have the right to terminate this employment relationship without suffering financial consequences, i.e., contract damages. The agreement restricted claimant from establishing an independent working relationship with the home occupiers for whom she did domestic work, and one provision included a monetary fine if claimant, without Dana's involvement, established an independent working relationship with the home occupier.

Dana's was paid directly by the home occupier and from this amount paid both itself and claimant. Dana's did not withhold taxes, but did have claimant post a $25 bond. Thus, claimant received her pay directly from Dana's. Claimant had no jobs other than her work for Dana's at the time of the accident.

The ALJ's factual determination, which was affirmed by the Panel, determined that, under the "right to control" test and the relative nature of the work standard, Dana's was the employer of claimant.

## I.

Dana's argues that the ALJ and Panel erred in holding that it was an employer within the meaning of § 8–41–105, C.R.S. (1986 Repl.Vol. 3B) (now codified as § 8–40–202, C.R.S. (1990 Cum.Supp.)). Dana's essentially argues that it was acting as a referral business and did not have or exercise control over the claimant's work in the homes to which she was assigned. Dana's further argues that it was not part of Dana's business to do housekeeping, rather it merely referred people to others for such work. For these reasons, Dana maintains it was not an employer. We disagree with this position.

■ The determination of the operative facts as to whether a person is an employee or an independent contractor is generally within the province of the ALJ and the Panel. *Olsgard v. Industrial Commission*, 190 Colo. 472, 548 P.2d 910 (1976). Here, there is substantial evidence to support their conclusions, and thus, we will not disturb them on appeal.

■ No one factor is determinative as to whether a person is an employer as opposed to being an independent contractor. For example, Dana's points to the lack of everyday direction or control over claimant's housekeeping work. The most important factor, however, in determining whether a person is an independent contractor or employee is the right to control, not the fact of control.

■ In this regard, one of the main issues to be decided is whether the purported employer has the right to terminate the relationship without liability. *Industrial Commission v. Valley Chip & Supply Co.*, 133 Colo. 258, 293 P.2d 972 (1956). The right to discharge someone without liability inherently involves the right to control and is inconsistent with the concept of independent contractor. *See Faith Realty & Development Co. v. Industrial Commission*, 170 Colo. 215, 460 P.2d 228 (1969).

■ Here, the record supports the ALJ's and Panel's determination that Dana's could immediately terminate claimant's working relationship both with Dana's and the home occupier without resulting liability. Furthermore, although Dana's did not inspect or direct the onsite work of claimant on a regular basis, an explanation for its ongoing intermediate status with claimant and the home occupier, other than receiving a percentage of the income, was for

Dana's to resolve problems which developed between the home occupier and the domestic concerning the latter's performance. Therefore, in addition to the right to terminate claimant's work relationship, this employment structure inherently reserved to Dana's, the authority to correct or direct the claimant or to reassign her. This "right of control" is highly persuasive evidence that claimant was an employee of Dana's. *Industrial Commission v. Valley Chip & Supply Co., supra.*

■ Dana's next argues that we should give determinative weight to the parties' characterization in the agreement that claimant was an independent contractor. However, the way parties refer to themselves does not determine whether a claimant is an independent contractor or an employee. *Faith Realty & Development Co. v. Industrial Commission, supra; RCS Lumber Co. v. Sanchez,* 136 Colo. 351, 316 P.2d 1045 (1957).

■ Dana's also argues that an independent contractor relationship existed, in part, because it did not withhold taxes or social security from claimant's paycheck. This factor is of limited significance in determining if a person is an employee rather than an independent contractor. *See Luby v. Industrial Commission,* 82 Ill.2d 353, 45 Ill.Dec. 88, 412 N.E.2d 439 (1980). The fact, however, that claimant was compensated by Dana's on an hourly basis is significant in determining that claimant had an employee status. *Neely–Towner Motor Co. v. Industrial Commission,* 123 Colo. 472, 230 P.2d 993 (1951).

The evidence also supports the ALJ's determination that the employment agency license which Dana's obtained from the City and County of Denver is not, under the circumstances here, significant evidence of an independent contractor relationship. The ALJ indicated that such licenses do not describe either the functions of the business receiving the license or preclude the business from being an employer. Furthermore, here, there is a "permanent" three-way relationship which results in an implicit ongoing "right of control" situation between Dana's and claimant, which is atypical in a true employment agency relationship. Therefore, we agree that under the "right of control" and other traditional tests, the evidence supports the Panel's determination.

## II.

■ Dana's next argues that the ALJ and Panel erred in their determination that, under the relative nature of the work test, an employer-employee relationship existed between it and claimant. We disagree.

The relative nature of the work test has been used in several states to determine if a worker comes under that state's workers' compensation act. 1C A. Larson, *Workmen Compensation Law* § 43.52 (1990).

Dana's implicitly argues that it is merely a referral agency and, therefore, the nature of its business is not the operation of a house cleaning business. In our view, the evidence supports the ALJ's and Panel's determination that claimant was doing the business or work of Dana's when she was injured. The evidence supports a conclusion that the work or business of Dana's was to hire and, if necessary, fire domestic employees for home occupiers in the Denver metropolitan area. In conducting this business, Dana's maintained an ongoing relationship with both the home occupier and with the worker. Particularly under such circumstances, we conclude that a major part of Dana's business was to provide continuing domestic services to these home occupiers.

We recognize there is a split of authority in other states as to whether employment referral operations are employers for purposes of a workers' compensation act. *See* 1C A. Larson, *Workmen's Compensation Law* § 48.23 (1990). We find persuasive, however, those cases holding that a company which provides laborers to a third party can be an employer as to such employees. *See Renfroe v. Higgins Rack Coating & Manufacturing Co.,* 17 Mich.App. 259, 169 N.W.2d 326 (1969); *Smith v. Kelly Labor Service,* 239 So.2d 685 (La.App.1970); *Diaz v. Ulster Vegetable Growers Co-operative,*

*Inc.*, 282 App.Div. 426, 123 N.Y.S.2d 321 (1953).

Both parties argue that *Finlay v. Storage Technology*, 764 P.2d 62 (Colo.1988) supports their position. *Finlay* addressed the issue of whether Storage Technology Corp. (STC), a manufacturer of peripheral computer equipment, was a statutory employer under § 8–48–101, C.R.S. (1986 Repl. Vol. 3B) of the Act, of those persons who, on the basis of a contract between STC and Allied Maintenance Corp. (Allied), were assigned by Allied to do janitorial work at STC. In *Finlay*, the injured party, after recovering for his injuries under the Act from Allied, filed a personal injury action against STC. The court determined that STC was a statutory employer and was, therefore, immune from suit.

Since the analysis here is based on interpreting the scope of § 8–41–105, and not § 8–4–101, *Finlay* is not directly applicable. *Finlay* does, however, implicitly indicate that both the supplier and user of cleaning personnel can be employers under different sections of the Act. *Finlay* also reaffirms that the Act is to be given a broad interpretation in bringing employers and workers under the Act. In this era of comparative negligence and third-party lawsuits, this type of interpretation inures to the benefit of both the employer and the employee.

There is substantial evidence to support the Panel's conclusion that claimant was an employee under the traditional "right of control" test, as well as under the more recent standard of whether the injured person was engaged within the broad scope of the relative nature of the work test. Moreover, the ongoing and apparent permanent involvement of Dana's in the relationship between the domestic and the home occupier presents a compelling circumstance for determining that an employer-employee relationship exists.

■ We are aware that § 8–41–105(4.5), C.R.S. (1986 Repl.Vol. 3B) provides that employees who do part-time domestic work in the private home of an employer generally are excluded from the Act. This statute is intended to exempt the private home occupier who employs domestics, from the requirements of the Act. However, there is no language in the statute to suggest that it was intended to apply to businesses that employ and supply such workers.

We conclude that the record supports the Panel's determination that claimant was an employee of Dana's under the Workers' Compensation Act. Therefore, its order as to the award of benefits to claimant is affirmed.

STERNBERG, C.J., and ROTHENBERG, J., concur.