**B. Maxine EVANS, Plaintiff–Appellee,**

v.

**Myrle WEBSTER, Defendant–Appellant.**

**No. 89CA2026.**

Colorado Court of Appeals,
Div. IV.

July 5, 1991.

Rehearing Denied Jan. 30, 1992.

Certiorari Denied July 7, 1992.

Bartholomew & Cristiano, Frank V. Cristiano, Denver, for plaintiff-appellee.

White and Steele, P.C., Sandra Spencer Coleman, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Myrle Webster, appeals the judgment entered on a jury verdict in favor of plaintiff, B. Maxine Evans. We reverse and remand.

Plaintiff was injured when she fell while attempting to secure the garage door at the defendant's home. At the time, plaintiff was working for the defendant as a personal attendant pursuant to a contract between defendant and a temporary help agency, Kelly Assisted Living Services. Plaintiff sustained severe injuries as a result of the fall and could no longer work.

Plaintiff filed for, and received, workers' compensation benefits for her injuries through Kelly. She also instituted this negligence suit to recover damages against defendant for the same injuries. The suit was based on the theory that she was not defendant's employee and, therefore, was not limited to a remedy in the nature of workers' compensation.

At trial, defendant moved for a direct verdict claiming the evidence clearly established that the plaintiff was a loaned employee. The court denied the motion. It found there was no credible evidence of an employment relationship between plaintiff and defendant. According to the trial court, the uncontradicted evidence demonstrated that Kelly was the sole employer of plaintiff as a matter of law. It reasoned that defendant was not a borrowing employer pursuant to the provision of the Workers' Compensation Act now codified as § 8–41–102, C.R.S. (1990 Cum.Supp.), and thus, it concluded that plaintiff's negligence action was not barred.

The jury determined defendant was negligent and returned a verdict for plaintiff in the amount of $180,000. This appeal followed.

The record reveals the following facts as being undisputed. Defendant was an elderly widow who required the assistance of a personal attendant. At the urging of a close friend, she contacted Kelly. Kelly was in the business of providing home health aides and temporary live-in companions to its clientele. When a client requested a Kelly worker, Kelly would select a qualified individual and assign the worker to the client's home. Plaintiff was one such worker.

On September 14, 1987, an agreement was reached between Kelly and defendant pursuant to which Kelly agreed to furnish the services of a home health aide. The agreement provided that the aide would be employed to work in the defendant's home eight to ten hours a day, six days a week. No term of employment was specified, though both parties regarded the relationship as permanent or of indefinite duration.

The agreement also incorporated instructions originating with defendant. These were specific descriptions of the aide's assigned duties noted in writing on the agreement. Kelly made no changes in these instructions but merely passed them on verbatim to the aide. According to the instructions, the aide's job was to provide companionship and to assist in shopping and light housekeeping work. Responsibility also fell upon the aide to ensure defendant's safety in the home. The aide was authorized to drive defendant's car and use whatever of defendant's tools, utensils, and other household implements were needed in performing her tasks.

The total charge for the home health aide services was $93 per day to be paid by defendant to Kelly. The aide was paid a fixed amount by Kelly according to the number of hours worked for defendant. The amount charged by Kelly for the aide's services was at a rate greater than the amount Kelly paid the aide. The extra charge covered, besides Kelly's profit, so-

cial security, such expenses as Kelly's payment of workers' compensation, and unemployment insurance for the benefit of the aide.

Defendant was free to utilize and direct the aide's performance of the contract as the particular situation demanded, and Kelly reserved to itself only the right to prohibit the performance of certain tasks requiring special skills or competence. Kelly would intervene in the aide's performance of her duties only at defendant's request. If defendant determined that the aide was not performing as agreed or if she was dissatisfied with the aide for any other reason, the defendant could unilaterally terminate the aide and/or cancel the contract with Kelly. Finally, the agreement did not prohibit the aide from becoming defendant's employee, nor did it give Kelly the right to replace or reassign the aide.

Pursuant to the agreement, Kelly selected plaintiff and assigned her to defendant's account. Plaintiff assumed her duties, and on the first day at work she was injured.

## I.

Defendant contends that the trial court erred in denying her motion for a directed verdict. She argues that she was plaintiff's special employer under the "loaned servant" doctrine and, therefore, was immune from tort liability by virtue of the statute now codified as § 8–41–102, C.R.S. (1990 Cum.Supp.) We agree.

■ In evaluating motions for directed verdict, we must determine whether there is any evidence of sufficient probative force to support the trial court's findings. *Safeway Stores, Inc. v. Langdon,* 187 Colo. 425, 532 P.2d 337 (1975). We do so by considering all evidence in the light most favorable to the party against whom the motion is directed and by indulging every reasonable inference that can be legitimately drawn from the evidence in that party's favor. *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984).

■ A motion for directed verdict should be granted only in the clearest of cases when the evidence is undisputed and it is plain no reasonable person could decide the issue against the moving party. *McGlasson v. Barger,* 163 Colo. 438, 431 P.2d 778 (1967). If there is no conflicting evidence with respect to the particular issue raised by the motion for directed verdict and the only concern is the legal significance of undisputed facts, then the appellate court may make an independent determination of the issue. *See Weed v. Monfort Feed Lots, Inc.,* 156 Colo. 577, 402 P.2d 177 (1965); *Romero v. Liquor & Beer Licensing Board of Pueblo,* 540 P.2d 1152 (Colo.App.1975).

Here, the trial court decided the underlying employment issue as a matter of law. It took great pains to say that only one inference was possible from the evidence presented, namely, that plaintiff was solely the employee of Kelly and that she was not the employee of the defendant. The trial court based its ruling on the assumption that the evidence was undisputed, and the record bears this out. The dispositive question thus becomes whether the trial court correctly decided this legal issue.

A "special employment" relationship is deemed to exist whenever an employer provisionally assigns to another employer the services of an employee who thereby surrenders to the borrowing employer the right of control over the employee's actions. Restatement (Second) of Agency § 227 (1958). That a worker can simultaneously be the employee of two persons is well-recognized in the law. *Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909).

This common law rule applies to cases arising under the Workers' Compensation Act and allows an employee to be simultaneously in the general employment of one employer and in the special employment of another, provided the employee understands that he or she is submitting to the control of the special employer. *See* § 8–41–303, C.R.S. (1990 Cum.Supp.); *Continental Sales Corp. v. Stookesberry,* 170 Colo. 16, 459 P.2d 566 (1969).

In this dual employment situation, the employee's only remedy for an injury sustained while in the course of employment

with the borrowing employer is through workers' compensation. A separate tort action against the special employer is barred. Section 8–41–102, C.R.S. (1990 Cum.Supp.).

Courts have traditionally considered several criteria to be relevant in the determination whether a special employment relationship exists. These criteria include: (1) whether the borrowing employer has the right to control the employee's conduct; (2) whether the employee is performing the borrowing employer's work; (3) whether there was an agreement between the original and borrowing employer; (4) whether the employee has acquiesced in the arrangement; (5) whether the borrowing employer had the right to terminate the employee; (6) whether the borrowing employer furnished the tools and place for performance; (7) whether the new employment was to be for a considerable length of time; (8) whether the borrowing employer had the obligation to pay the employee; and (9) whether the original employer terminated its relationship with the employee. *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969); 1C A. Larson *Workmen's Compensation Law* § 48.00, et seq. (1990).

■ Of the nine factors, number four, the consent of the employee, is of critical importance, and, when coupled with element one, control over the work activities of the employee and element five, the concomitant power to terminate the relationship, would seem to be decisive. Section 8–41–303, C.R.S. (1990 Cum.Supp.); *see Faith Realty & Development Co. v. Industrial Commission*, 170 Colo. 215, 460 P.2d 228 (1969); *Dana's Housekeeping v. Butterfield*, 807 P.2d 1218 (Colo.App.1990).

■ Since the only work to be done was that of Kelly's clients, plaintiff must necessarily have agreed to work for defendant. The contract between defendant and Kelly specifically informed plaintiff that she would be assigned to work at the defendant's home and apprised her of the defendant's name and address. Plaintiff could have declined to accept the assignment if she chose. Furthermore, since plaintiff worked for a company which was in the business of furnishing employees, plaintiff knew Kelly would send her to different locations. All these facts admit of a consensual relationship and point to the existence of, at a minimum, an implied contract of hire between plaintiff and defendant. *See Danek v. Meldrum Manufacturing & Engineering Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977).

The evidence adduced here shows unequivocally that defendant had the right to control plaintiff's work activities. A Kelly superintendent testified that plaintiff received instructions concerning her work activities in accordance with the agreement between Kelly and the defendant. Pursuant to that agreement, defendant informed Kelly concerning the scope of plaintiff's duties and was free to reassign her to any other duties that warranted attention. Thus, defendant had the right to control the plaintiff's work activities while she was working at the defendant's home.

The evidence likewise shows that defendant had the right to discharge plaintiff from her employment with defendant if plaintiff's work proved unsatisfactory. In addition defendant had the power to terminate the special employment relationship at any time by canceling her contract with Kelly.

Plaintiff suggests that the control exercised by defendant is no greater than the control vested in Kelly and that, therefore, other factors such as the length of the relationship, responsibility for the payment of wages, and the fact that there was no express contract for hire between plaintiff and defendant preclude a finding of dual employment as a matter of law. We reject this analysis.

Authority for plaintiff's position is derived mainly from *Continental Sales Corp. v. Stookesberry, supra,* in which the supreme court held that a loaned employee relationship will not be held to bar a tort suit unless it is shown that the loaning itself constitutes a new contract of hire between the employee and the borrowing employer. In that case, there was no evidence of such a contract, and the court was thus unable to conclude that the plaintiff,

who had been assigned by his regular employer to do work for the defendant, was also the employee of the defendant for purposes of the Workers' Compensation Act.

Plaintiff utilizes *Stookesberry* to argue that, since the evidence here does not *necessarily* reflect any new contract between the parties, the verdict must be upheld. This reasoning is flawed for two reasons.

First, the complete absence of evidence proving that the loaning constituted a new contract of hire in *Stookesberry* is far different than the quantum of evidence demonstrated here. The *Stookesberry* court acknowledged that the key test for determining whether one is a loaned employee is the "deliberate and informed consent" of the employee.

Plaintiff admittedly signed on with Kelly for the express purpose of assignment to Kelly's clients who would direct and control her actions. The only work she would perform would be that of these clients, and any remuneration received was dependent upon the existence of this special employer-employee relationship. There can be no dispute here that she consented to this arrangement.

■ Second, the simple reality of this case is that both Kelly and defendant were employers of plaintiff, each having control over her work in different respects. It is not necessary to a finding of special employment that defendant have exclusive right of control over the plaintiff's work.

The majority of courts which have confronted this issue have held that, in labor-broker situations such as that here, a dual employment relationship exists because of the right of each employer to control the employee in the performance of his or her work. *See Alexander v. Chevron U.S.A.*, 806 F.2d 526 (5th Cir.1986); *Maynard v. Kenova Chemical Co.*, 626 F.2d 359 (4th Cir.1980); *Beaver v. Jacuzzi Brothers, Inc.*, 454 F.2d 284 (8th Cir.1972); *St. Claire v. Minnesota Harbor Service, Inc.*, 211 F.Supp. 521 (D.Minn.1962); *Terry v. Read Steel Products*, 430 So.2d 862 (Ala.1983); *Word v. Motorola, Inc.*, 135 Ariz. 517, 662 P.2d 1024 (1983); *Rumsey v. Eastern Dis-*

*tribution Inc.*, 445 So.2d 1085 (Fla.App. 1984); *Danek v. Meldrum Manufacturing and Engineering Co., supra; Renfroe v. Higgins Rack Coating & Manufacturing Co.*, 17 Mich.App. 259, 169 N.W.2d 326 (1969); *Doboshinski v. Fuji Bank, Ltd.*, 78 A.D.2d 537, 432 N.Y.S.2d 99 (1980); *Eaddy v. A.J. Metler Hauling & Rigging Co.*, 284 S.C. 270, 325 S.E.2d 581 (App.1985). We find these authorities to be persuasive.

■ Because the facts relating to the nature of plaintiff's work activities and plaintiff's consent to work for defendant are not in dispute in this case, the application of those facts to the test of a loaned employee relationship is a question of law. *See Brush Hay & Milling Co. v. Small*, 154 Colo. 11, 388 P.2d 84 (1963).

We hold then, as a matter of law, that the plaintiff had consented to work for the defendant pursuant to a contract of hire within the meaning of the Workers' Compensation Act, that she was an employee of both Kelly and the defendant, and that therefore her tort suit against the defendant was barred by the Workers' Compensation Act.

## II.

■ Plaintiff asserts that the trial court's decision was not erroneous because the statutory provisions now codified as § 8–40–302(4), C.R.S. (1990 Cum.Supp.) and § 8–41–402, C.R.S. (1990 Cum.Supp.) except defendant from coverage under the Workers' Compensation Act and permit tort recovery here. We disagree.

Section 8–40–302 expressly excepts from coverage under the Act employers of persons engaged in domestic or other work "about a private home." Section 8–41–402 excepts from statutory employer status "the owner of a private home who contracts out any work done to or about said home...." Plaintiff argues that, because workers' compensation coverage was provided by Kelly these statutory provisions apply such that defendant could not be considered an employer for purposes of § 8–41–402.

Plaintiff's reliance on these provisions is misplaced. The statutory exceptions are not intended to abrogate the borrowed servant doctrine in the case of work performed at a private home, except in the limited situations in which the domestic employment is not on a full-time basis. *See* § 8–41–401(1), C.R.S. (1990 Cum. Supp.).

Here, the plaintiff was hired to perform domestic services for defendant on a full-time basis. *See* § 8–40–302(4), C.R.S. (1990 Cum.Supp.). Defendant compensated Kelly for plaintiff's services, and Kelly maintained workers' compensation coverage on plaintiff's behalf. *See* § 8–41–401(2), C.R.S. (1990 Cum.Supp.). In these circumstances, the Act is intended to apply. *See Melnick v. Industrial Commission*, 656 P.2d 1318 (Colo.App.1982).

### III.

 Plaintiff also argues that the statute now codified as § 8–41–401, C.R.S. (1990 Cum.Supp.) is inapplicable to defendant because defendant was not engaged in a business. Therefore, plaintiff contends defendant is not her employer and the trial court's denial of defendant's directed verdict motion was correct. We disagree.

The cited statute establishes the conditions under which persons engaged in the conduct of a business, subcontracting out regular parts of its work to another, may be considered the employer of the subcontractor's regular employees and claim the protection of the Act. The plaintiff notes that the statute's language speaks in terms of "employer" as being synonymous with "business," and thus argues that, at least as far as domestic employees are concerned, a private homeowner does not act as an employer.

In our view, plaintiff's position rests upon a misreading of the statute. As explained in *Kalmon v. Industrial Commission*, 41 Colo.App. 259, 583 P.2d 946 (1978), the statutory provisions in question address a different situation than the dual employment situation presented here. Section 8–41–401 pertains to the potential liability of a general contractor under the Act for injuries to a subcontractor's employee when the general contractor has *not* borrowed the subcontractor's employee. The focus under that statute is whether the work contracted out is part of the employer's regular business operation. *Finlay v. Storage Technology Corp.*, 764 P.2d 62 (Colo.1988).

In contrast to the borrowed employee relationship, the statutory employment relationship does not rest upon a finding of employer control. *Finlay v. Storage Technology Corp., supra.* Thus, we reject plaintiff's argument.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded with directions to dismiss plaintiff's complaint with prejudice.

DAVIDSON and ROTHENBERG, JJ., concur.