FRANK C. KLEIN & COMPANY, INC., a Colorado corporation, Plaintiff–Appellant,

v.

COLORADO COMPENSATION INSURANCE AUTHORITY, Defendant–Appellee.

No. 92CA0952.

Colorado Court of Appeals, Div. I.

July 1, 1993.

Rehearing Denied Aug. 5, 1993.

Stettner, Miller and Cohn, P.C., John S. Finn, Bill C. Berger, Denver, for plaintiff-appellant.

Anderson, Campbell and Laugesen, P.C., John V. FitzSimons, Yvonne M. Cordes, Denver, for defendant-appellee.

Opinion by Judge PIERCE.

Plaintiff, F.C. Klein & Company (Klein), appeals from a declaratory judgment entered in favor of the Colorado Compensation Insurance Authority (CCIA). We affirm.

Klein is a Colorado corporation engaged in the business of petroleum asphalt transportation. As part of its business operations, Klein employs a number of truck drivers for its own fleet of trucks. In addition, Klein contracts with independent owner/operator truck drivers for use of their equipment and transportation services under lease agreements.

At all times relevant to this appeal, Klein maintained a workers' compensation insurance policy through CCIA covering its employee drivers. In September 1990, CCIA conducted an audit of Klein's workers' compensation insurance premium, following which it concluded that the drivers working under lease were also employees of Klein. Therefore, CCIA required Klein to pay back premiums in the amount of $33,850 to cover the owner/operator drivers.

Subsequently, Klein commenced this action for declaratory judgment seeking a determination that its owner/operator drivers were "independent contractors" and not "employees" as defined by the Workers' Compensation Act. Klein further argued that the lease agreements constituted *prima facie* evidence of the owner/operators' status as "independent contractors" pursuant to § 40–11.5–102, C.R.S. (1992 Cum.Supp.), effective June 8, 1990.

In lieu of trial, Klein and CCIA submitted to the court a statement of stipulated facts and the deposition testimony of one expert witness. Thereafter, the trial court entered judgment in favor of CCIA, concluding that Klein had failed to establish that its owner/operators were "independent contractors" and that, therefore, it was liable for the back premiums required by CCIA. In addition, the trial court ruled that § 40–11.5–102 was inapplicable to the Workers' Compensation Act.

## I.

On appeal, Klein first contends that the trial court erred in determining that § 40–11.5–102 was not applicable to the Workers' Compensation Act. We agree.

In construing a statute, our primary task is to give effect to the intent of the General Assembly. *Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991).

In determining legislative intent, we must first examine the plain meaning of the statutory language. *People v. Bowman*, 812 P.2d 725 (Colo.App.1991). If the language of the statute is ambiguous, we may look to the legislative history and the rules of statutory construction to determine the intent of the legislature. *O'Gorman v. Industrial Claim Appeals Office*, 826 P.2d 390 (Colo.App.1991).

Section 40–11.5–101, C.R.S. (1992 Cum.Supp.) provides that motor vehicle carriers and contract motor carriers may employ independent contractors. Further, § 40–11.5–102 sets forth certain provisions which a lease between motor vehicle carriers or contract carriers and independent contractors may include. Leases containing such provisions "shall be presumed prima facie evidence of an independent contractor relationship between the parties to the lease." Section 40–11.5–102(4), C.R.S. (1992 Cum.Supp.).

The term "independent contractor" is used in both § 40–11.5–102 and § 8–41–401(3), C.R.S. (1992 Cum.Supp.), of the

Workers' Compensation Act. However, § 40–11.5–101 makes no reference to the Workers' Compensation Act. Moreover, § 40–11.5–102(1)(b), C.R.S. (1992 Cum. Supp.) states, in pertinent part, that "[c]ompliance with the provisions of this paragraph (b) shall not affect the status of the independent contractor as an independent contractor *for purposes of this article.*" (emphasis added)

Consideration of these various provisions leads us to conclude that it is unclear whether the General Assembly intended § 40–11.5–102 to apply to the Workers' Compensation Act. Therefore, we conclude that the statute is ambiguous.

The legislative history surrounding § 40–11.5–102 provides little insight into the intent of the General Assembly. However, in 1992, the General Assembly amended the Workers' Compensation Act such that it specifically excludes "any person who is working as a driver under a lease agreement pursuant to section 40–11.5–102, C.R.S., with a common carrier or contract carrier" from the statutory definition of "employee." *See* Colo.Sess.Laws 1992, ch. 224, § 8–40–301 at 1798.

At the hearings concerning the 1992 amendments, the original Senate sponsor of § 40–11.5–101 testified that authors of the statute had worked closely with the Department of Labor and that "the main direction" behind it was to "clarify" the definition of "independent contractor." Further, the original House sponsor of § 40–11.5–101 testified that, since its enactment, the Department of Labor had ignored the General Assembly's intent and had been:

> going back and saying these people are not independent contractors. They are employee/employer relationships and please pay your back taxes to the Department of Revenue. Please pay your back unemployment compensation, please pay your ... workmen's comp. insurance....

*See* Hearings before the Senate Committee on Transportation 58th General Assembly (January 21, 1992). The purpose of the 1992 amendments, therefore, was to remedy the erroneous interpretation of § 40–11.5–102 applied by the Department of Labor.

Based upon this subsequent legislative history, we conclude that the General Assembly intended that the definition of "independent contractor" contained in § 40–11.5–102 should be applied to the Workers' Compensation Act. Therefore, the trial court erred in ruling that § 40–11.5–102 was inapplicable here.

## II.

Next, Klein contends that because its lease agreements contain the provisions set forth in § 40–11.5–102, its owner/operators drivers are presumed by statute to be "independent contractors." CCIA does not dispute that Klein's lease agreements constitute *prima facie* evidence of "independent contractor" status under § 40–11.5–102(4). Rather, it contends that because Klein's leases provided for substantial controls in addition to those set forth in § 40–11.5–102 which are inconsistent with independent contractor status, the statutory presumption is overcome. We agree with CCIA.

■ Because the undisputed facts in the record cover the issue, we may determine the status of the owner/operator drivers as a matter of law. *See University of Colorado Medical Center v. Industrial Commission*, 622 P.2d 596 (Colo.App.1980) (if facts are undisputed, question of whether a person is an employee under the workers' compensation statutes is one of law).

■ In determining whether a person is an employee or an "independent contractor," we have applied two common law tests: the "control" test and the "relative nature of the work" test. If either of these tests is satisfied, the person is an employee. *Stampados v. Colorado D & S Enterprises Inc.*, 833 P.2d 815 (Colo.App. 1992).

■ Under the "control" test, the most important factor in determining whether a person is an independent contractor or an employee is the *right* to control, not the

fact of control. *Dana's Housekeeping v. Butterfield,* 807 P.2d 1218 (Colo.App.1990).

■ Independent contractors are not free of all control; they may be subject to control sufficient to ensure that the end result contracted for is reached. However, control over the means and methods of accomplishing the contracted for result is inconsistent with "independent contractor" status. *See Carpet Exchange v. Industrial Claim Appeals Office,* 859 P.2d 278 (Colo.App.1993); 1B A. Larson, *Workmen's Compensation Law* §§ 44.21 to 44.23 (1992).

Section 40–11.5–102(4), C.R.S. (1992 Cum. Supp.) states that a lease between a motor carrier or contract motor carrier and independent contractors may contain provisions relating to the right of the owner/operator to lease its equipment to an authorized motor carrier; the carrier's right to require instruction in its policies and applicable federal, state, and local regulations; the carrier's right to require driver safety training; the carrier's right of control over employees of the lessor concerning compliance with federal, state, and local regulations; the right of the carrier to establish deadlines and timetables for shipments by the lessor; the carrier's right to establish regulations covering radio communications; and the carrier's right to prohibit the lessor from working for other carriers during the term of the lease.

Leases containing these provisions are presumed to be prima facie evidence of an independent contractor relationship between the parties. However, § 40–11.5–102(4) states further that: "This presumption may be overcome by clear and convincing evidence of an employment relationship between the parties to the lease considering only factors not in the lease...."

■ Here, each of Klein's owner/operator truck drivers was required to execute three documents: (1) a Public Utilities Commission "Lease of Motor Vehicle Equipment/Intrastate" form (the PUC lease), (2) a Department of Transportation/Interstate Commerce Commission "Lease of Motor Vehicle Equipment/Inter-state" form (the ICC lease), and (3) an "Agreement for Contract Services of Motor Vehicle Equipment" drafted by Klein.

These documents provide Klein with a significant right of control over its owner/operator truck drivers *in addition* to that required by state and federal regulation. For example, "Agreement for Contract Services" states that the "[c]ontractor, his agents and employees shall comply with *all rules* promulgated by Klein, and shall follow the provisions set forth in *any manual of instruction or bulletin that may be issued by Klein* from time to time." (emphasis added)

Among the "manuals of instruction" issued by Klein was its "Policy and Procedures" book which provides for cancellation of truck drivers' contracts for three moving violations in the course of twelve months, extensive pre- and post-trip procedures, and requirements relating to the qualifications of the owner/operators and their employees. Further, the owner/operator drivers were required to comply with conditions imposed by Klein's clients, such as detailed hair grooming requirements and a requirement that drivers wear long-sleeved shirts. Such controls are not directed to the accomplishment of a contracted for end; rather, they are specific controls over the means and methods by which the drivers carry out that end. *See Carpet Exchange v. Industrial Claim Appeals Office, supra.*

Klein contends that such controls over the methods and means of *deliveries* are irrelevant because the nature of the independent contractors' business was the *lease* of equipment, not delivery of goods. Each of the owner operators was free to determine, among other things, whether to enter into a lease with a carrier, whether and what types of equipment to purchase, and whether to accept a certain load for delivery. In addition, owner/operators were responsible for maintenance and fuel costs, insurance, and licensing. Therefore, Klein concludes, the owner/operators retained ultimate control and responsibility for their leasing businesses. We are not persuaded.

Klein's "Agreement for Contract Services" form provides that "the contractor hereby contracts to Klein certain *motor vehicle services with equipment*, trailers, and all accessories attached thereto or used in connection therewith." (emphasis added) In addition, it provides that: "Upon *completion of each trip*, the Contractor shall submit to Klein all applicable signed delivery receipts bill of lading [sic], fuel receipts, copies of manifests for all work performed, trip sheets and logs." (emphasis added)

Based on this and other language in the lease agreements, we are convinced that the owner/operators were not engaged solely in the business of equipment rental. Rather, the lease agreements contemplated that the owner/operators would provide driving services to Klein.

Thus, to the extent that the owner/operators were engaged in the business of providing driving services, Klein exercised significant control over the means and methods of performance that were wholly unrelated to the achievement of the contracted-for end.

Under these circumstances, we conclude that the statutory presumption of independent contractor status is overcome by clear and convincing evidence in the record of Klein's right of control over its owner/operator drivers. *See* § 40–11.5–102(4). *See also* Colo.Sess.Laws 1993, ch. ____, § 8–40–202 (Approved April 12, 1993) (setting forth factors to be considered in determining whether a person is an employee within the meaning of the Workers' Compensation Act). Therefore, the trial court did not err in concluding that the Klein was liable for workers' compensation insurance premiums to cover its owner/operator truck drivers.

### III.

Finally, Klein contends that the trial court erred in concluding that its owner/operator truck drivers were not "independent contractors" within the meaning of the Workers' Compensation Act, as the term was defined prior to the adoption of § 40–11.5–102. Again, we disagree.

 Generally, the determination as to whether a person is an employee under the Workers' Compensation Act is a question of fact. *Kalmon v. Industrial Commission*, 41 Colo.App. 259, 583 P.2d 946 (1978). However, the correctness of a legal conclusion based upon undisputed facts is properly a matter for the appellate court to determine. *Virginians Heritage Square Co. v. Smith*, 808 P.2d 366 (Colo.App.1991).

 In order to carry out the statutory objective of protecting workers, the definition of "employee" must be broadly construed. *Industrial Commission v. Valley Chip & Supply Co.*, 133 Colo. 258, 293 P.2d 972 (1956).

 However, the Workers' Compensation Act provides a narrow exception for "independent contractors" who (1) own the assets of a business, company, or service; (2) manage and control such business, company, or service; (3) have ultimate responsibility for all decisions affecting such business, company, or service; and (4) are subject to realize any profit or loss from such business, company, or service. Section 8–41–401(3), C.R.S. (1992 Cum.Supp.). Persons meeting these requirements are not considered actual or statutory employees, and they may choose whether or not to be treated as an employee covered by workers' compensation insurance. *See Stampados v. Colorado D & S Enterprises Inc., supra;* § 8–41–401(3), C.R.S. (1992 Cum. Supp.).

 Because "independent contractor" status is an exception to the general requirement of coverage under the Workers' Compensation Act, the burden of proof lies with the party asserting that a person is an independent contractor. *Stampados v. Colorado D & S Enterprises Inc., supra.*

 Here, it is undisputed that Klein's owner/operator drivers owned the assets of their business, namely their trucks, and that they were subject to realize profit or loss from their business. However, because Klein enjoyed a significant right of

control over the means and methods of performance beyond that necessary to ensure the contracted-for result, we conclude that the owner/operator drivers are "employees" within the meaning of the Workers' Compensation Act. *See Carpet Exchange v. Industrial Claim Appeals Office, supra.*

The PUC lease form provides that: "During the existence of this lease, the motor vehicle equipment described above *shall be under the complete control of the lessee.*" (emphasis added) In addition, the ICC lease states that: "It is understood that the leased equipment under this agreement is *in the exclusive possession, control and use of the authorized carrier* lessee and that the lessee assumes full responsibility in respect to the equipment it is operating." (emphasis added)

In addition, during the term of the lease, owner/operators are not permitted to use their equipment to transport freight for any person or entity other than Klein, and they are subject to the control of Klein with respect to the movement of their equipment. Such exclusive control over the business of the owner/operator truck drivers, although required in certain instances by state and federal regulation, is indicative of an employer/employee relationship. *See Faith Realty & Development Co. v. Industrial Commission,* 170 Colo. 215, 460 P.2d 228 (1969).

Finally, as noted above, Klein enjoyed substantial control over the means and methods of the owner/operator's performance beyond that required to ensure the completion of the contracted-for end. *See Carpet Exchange v. Industrial Claim Appeals Office, supra.*

Based upon the foregoing, we conclude that Klein's right of control over the conduct of the owner/operators satisfies the "control" test, and hence, its owner/operator drivers are not "independent contractors" under the Workers' Compensation Act. *See Dana's Housekeeping v. Butterfield, supra.*

Accordingly, we hold that although the trial court erred in ruling that § 40–11.5–102 was inapplicable to the Workers' Compensation Act, it properly determined that Klein was liable for workers' compensation premiums to cover its "owner/operator" drivers.

Therefore, the judgment of the trial court is affirmed. *See People v. Cerrone,* 780 P.2d 562 (Colo.App.1989) (judgment reaching the proper result, although based upon erroneous reasoning, will not be reversed upon review).

METZGER and DAVIDSON, JJ., concur.